E. H. BOURNE ET AL., Appellants, *v.* A. F. SHAPLEIGH ET AL., Respondents.

### May 11, 1880.

Where, by correspondence through the mails, parties have fully agreed upon the terms of the contract, it is not necessary, in order to bind them, that

the contract should be formally executed; but, if it appears that the parties intended that they should not be bound until the formal execution of the contract, this intention must govern.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

LEE & CHANDLER, for the appellants : A contract can be made by letters, and all letters of a correspondence relating to the same subject-matter are to be taken together in arriving at the intention of the parties. — Story on Con., sect. 386, and cases cited ; *Esmey* v. *Gerton*, 18 Ill. 483 ; *Vernander* v. *Codd*, Turn. &R. 352. And these letters are to be construed the same as a formal agreement.— *Kennedy* v. *Lee*, 3 Mer. 441 ; 1 Greenl. on Ev., sect. 268, and cases cited. If there is an absolute proposal and acceptance of a distinct proposition in the letters, the contract is binding, although the parties may have declared that the letters are to serve only as instructions for a formal agreement, or although it may have been an express term that a formal agreement was to be prepared and signed by the parties, and although the minutia of the contract are to be settled by the contemplated formal agreement. — *Skinner* v. *McDougal*, 2 De G. & S. 265 ; *Gibbons* v. *North-Eastern Metropolitan Asy. Dist.*, 11 Beav. 1 ; *Abbott* v. *Sheppard*, 48 N. H. 14 ; *Lucas* v. *James*, 7 Hare, 424 ; Chitty on Con. 730, and notes. And it matters not that the party accepting thought he would not be bound until a formal agreement was drawn up.—*Bell* v. *Offutt*, 10 Bush, 632 ; *Clevi* v. *Beaumont*, 1 De G. & S. 397 ; *Johnson* v. *King*, 2 Bing. 270 ; *Thomas* v. *Deering*, 1 Keen, 729. The mutual assent is perfect when nothing remains to be done to give either party the right to have it effected.—*Abbott* v. *Sheppard*, 48 N. H. 14. When the vendee unconditionally accepts a distinct proposition, and expressly leaves certain minutia to be settled by the vendor, the contract is closed so far as the vendee is concerned, unless he withdraw such submission before the vendor has acted thereon ; and the vendee cannot object to a settlement that

is reasonable, made by the vendor. — *Walker* v. *Eastern Counties R. Co.*, 6 Hare, 594 ; *Kennedy* v. *Lee*, 3 Mer. 441 ; *Fitzhugh* v. *Jones*, 6 Munf. ; Chitty on Con. 730, and notes.

MARTIN & LACKLAND, for the respondents : The intention of the parties, as gathered from their acts, must govern.— *The State to use* v. *Miserez*, 64 Mo. 596.

BAKEWELL, J., delivered the opinion of the court.

This was an action for damages for breach of a contract of sale of a patent-right. The defendants deny that any contract was made. The cause was tried without a jury, and there was a finding and judgment for defendants.

Evidence was introduced tending to show that plaintiffs had a right to manufacture and sell a can-opener, under letters patent issued to one Seymour. Defendants were making and selling a can-opener, which plaintiffs regarded as an infringement. In 1868, a member of plaintiffs' firm had a conversation with some member of defendants' firm on the subject, and after his return to Cleveland, where defendants did business, plaintiffs wrote to defendants, whose place of business was in St. Louis, giving a history of the patent, and requesting defendants to examine the matter. Defendants answered that they had taken legal advice, and, rather than to go to law, would make an arrangement. In this letter they say : " We desire to make such arrangement with you as will enable us to proceed with the manufacture of these goods, so as to realize something on an investment ; or to dispose of all our claim to you, and obtain our supplies from you as we need them in course of trade. Please state what would be the most satisfactory arrangement we could make with you. So far, we have manufactured but a few goods, owing to the difficulty of procuring them well made at such a price as would realize for us a margin of profit. None others have been made since we were advised of the character of our claim under the Seymour patent."

To this letter plaintiffs at once replied, declining to make

an offer for defendants' patent, and saying that in the case of defendants they would depart from their determination to give no license for infringing can-openers. They make a proposition that, if defendants will pay $600 down, and twenty-five cents per dozen royalty on all can-openers made or sold by defendants thereafter, plaintiffs will make no charge for what has been already sold, and will convey to defendants the right to sell can-openers constructed exactly like the one previously shown by defendants to a member of plaintiffs' firm. Defendants answer, asking that the price be lowered. Plaintiffs reply, refusing to change the terms. In answer to this letter, defendants write on October 20th : —

" We have your favor of October 16th, in answer to ours of 14th. Although we regret that you do not take a more liberal view of our situation, we accept your offer as stated in yours of 22d ult., in the hope that at some future time we may be able to make the investment reimburse us for all outlays. We think, however, you overrate the excellence of the invention, and our abilities to dispose of it. Our pattern is too expensive in its construction to meet with ready sale at a remunerative profit, and can hardly be said to come into competition with yours. Have the goodness to execute the proper papers, and send them to us in blank for examination, and we will arrange the settlement in such way as may be agreeable to you. Your early attention will oblige."

After an interval of more than two weeks plaintiffs write, apologizing for their long delay, and send on an agreement which they propose as the one to be executed by both parties, for the sale of the right to manufacture and sell the can-opener.

The defendants reply to this letter, after a delay of some weeks, calling attention to " two or three particulars in which," they say, " the articles of agreement seem to require notice. There is no provision," they say, " to secure to us

the exclusive right to manufacture under the Seymour patent, without which, imitations might be authorized so nearly like the Seymour patent as greatly to interfere with the advantage otherwise to be derived by us. Moreover, it would be advisable to have the privilege of disposing of our rights acquired in the instrument to third parties, if it should be found unprofitable to us to continue the business ourselves, or in the event of changes in our firm in the future. How long does the patent extend under the reissue of February 4, 1868? Some other features of the agreement might require attention, which could be given to it on the return of our Mr. Shapleigh; but the above only suggest themselves at the moment."

This letter is dated November 28, 1868. During 1870 or 1871, plaintiffs sent their agent to see defendants, and to collect the $600, and to collect the royalty on any can-openers that might have been manufactured in the interval. Defendants then said they could not manufacture largely on account of increased competition; they also objected to the terms of sale, and especially to some particulars in the proposed written agreement. When their agent returned to Cleveland, plaintiffs forwarded to defendants a copy of the correspondence, and asked to read it over; and write: "Whether you will now settle the matter as agreed by you, as shown by your letters, on condition of our making you a license in accordance with your views, so far as we are under obligation to do from the nature of the case. Regretting that circumstances prevented us from closing up the matter satisfactorily at the time of your proposition, and soliciting an early reply," etc.

No answer was sent to this letter, and nothing further passed between the parties until, in 1874, plaintiffs sent one of the firm to St. Louis, who insisted on payment of the $600. Cantwell, of defendants' firm, in this interview regretted that the letters had ever been written, and said that he "had put his foot down upon them," but promised to write to plaintiffs what he would do in the matter. Nothing

further was said or done on either side until this suit was brought, on May 19, 1877.

The court, at the instance of defendants, declared the law to be, that "If the court believes from the evidence that it was the intention of the parties to bind themselves to a contract of sale only after the same was reduced to formal instrument and signed by them respectively, and that such instrument has never been signed, then it will find for defendant." And : "If the court believes from the evidence that the offer contained in plaintiffs' letter of September 22, 1868, constituted only one of the clauses or stipulations of said contract, then it should find for defendant."

The only instruction asked by plaintiffs was as follows. It was refused : "It having been admitted, on the trial of this cause, that plaintiffs were the owners of all the interest of the firm of Bourne, Damon & Knowles, the letters patent mentioned in plaintiffs' petition, and all the right, title, and interest of said firm in the contract sued upon, the court declares the law to be, that if the letters read in evidence are genuine, and were received by the respective parties to whom they were addressed, then defendants are liable to plaintiffs in the sum of $600, with interest from the date of the acceptance of plaintiffs' proposition, October 12, 1868."

Where the parties have agreed to all the terms of a contract, the sole fact that the formal paper by which they intended that it should be evidenced has not been formally executed, will not necessarily be fatal, if the contract has been made by correspondence through the mail. If nothing remains but to reduce the contract to writing, according to the terms explicitly agreed upon, it may be immaterial that this has not been done. But it is not enough that the main features of the contract have been fixed by mail. If material terms, though subsidiary in their nature, have yet to be agreed upon, something in that case remains to be done besides the merely formal act of writing out and signing the

agreement.    There has been no meeting of minds and no contract.

It appears in this case that defendants did not consider that all the terms of the contract had been agreed upon. They insisted that they ought to have an exclusive right to sell the can-opener, and that a right to make and sell it, which to no extent excludes competition, would be valueless to them.    Nothing has been said in the letters as to the periods at which reports and settlements for sales were to be made.    Appellants seem, also, to have intended a future contract, the details of which were yet to be fixed by a formal instrument, which should constitute the agreement.    When they send on a blank agreement, they intimate a possibility that it may not in all respects meet the approval of defendants, and that the details were a matter for examination and arrangement.    When the blank agreement reaches St. Louis, defendants insist that in everything but its leading feature, it is not an agreement that they are willing to make ; their letter of November 28th shows that they regard the negotiations as still pending, and the terms as unsettled ; and plaintiffs seem to accept this view of the case, as they drop the matter there for a year or two, after which negotiations are renewed, but nothing definite is done about arranging the details or closing the contract, until in December, 1871, plaintiffs take the matter up again, admitting and expressing regret that the matter had not been satisfactorily closed at the time the proposition was made, three years before.

We think that, from the correspondence and from the acts and conduct of the parties, it appears that it was the intention of both parties that there should be no binding agreement until the contract which it was proposed to draw had been formally executed.    The very letter of defendants which is claimed as an unqualified acceptance of the offer of October 20th, requests that the papers to be executed be sent to defendants for examination, and offers to arrange a settlement, but without going into details.

The question is as to the intention of the parties. The letter of November 28, 1868, declares plainly, that in the view of defendants, the term of the contemplated contract had not yet been entirely settled in all material particulars ; and the subsequent silence of plaintiff was evidence tending to show that they also so regarded it.

The letters in evidence do not, in our opinion, make a contract of sale. The acceptance was an acceptance of certain articles of a proposed bargain, which seems to have never been consummated because the parties who were in negotiation with one another did not agree upon the details of the bargain. The matters as to which the minds of the parties did not meet, were not mere unimportant *minutiæ*. The proposed sale seems to have fallen through because the parties could not agree, or did not agree as to the exclusive right to manufacture, as to the right of the vendees to transfer their interest, and to provide for changes in their firm, as to the period during which the vendors would or could give the right, or as to the dates at which reports were to be rendered, and payments made on account of the royalty.

We see no error in the rulings of the Circuit Court, and its judgment will be affirmed. Judge LEWIS is absent ; Judge HAYDEN concurs.

