THE FEDERAL LAND & SECURITIES COMPANY, Appellee, v. J. W. HATCH, Appellant.

**Contracts for the sale of real estate:** OFFER TO PURCHASE: TERMS
1 OF ACCEPTANCE. Where the vendor of land attempts to convert an offer to purchase into a binding contract of sale, the acceptance of the offer must be of the very terms proposed; and if the seller undertakes to qualify his acceptance or to impose upon the buyer additional terms and conditions there is no contract which either party can enforce.
In this action the defendant submitted a written proposition of purchase together with a check for the amount of his first payment as provided in his proposition, but the plaintiff's acceptance contained terms and conditions not contemplated by the proposition, and the defendant is held to have been justified in refusing payment of the check and that plaintiff is not entitled to recover thereon.

**Same:** ACCEPTANCE AND APPROVAL OF OFFER TO PURCHASE. A written
2 proposition for the purchase of land, which contains an express declaration that the same is made subject to approval by the seller, is not binding until the same is accepted and approved as provided.

**Same:** WHEN A CONTRACT BECOMES BINDING. A written proposition
3 to purchase land may of itself constitute a binding contract if such was the intention of the parties, even though a further and more formal writing was contemplated; yet this is only the case where the terms of the formal writing have been agreed upon. And where it was the understanding of the parties that a future

writing should be executed by them detailing the terms and conditions of the transaction, it is a general rule that no contract is in fact effected until such writing is executed.

**Same.** Where the proposition to purchase is uncertain and indefinite as to some material terms there is a strong presumption that it was merely preliminary to a further contract, in which these matters should be agreed upon in detail.

**Same:** ACCEPTANCE BY A THIRD PARTY. Where a proposition to purchase land is made to a certain person or corporation, contemplating acceptance by such person or corporation and a further written agreement detailing the terms and conditions of the purchase, the vendor ·can not insist that the purchaser enter into such future contract with a third person unless he chooses so to do; and where, as in this case, the subsequent contract was presented by the vendor in the name of another and was refused by the vendee that terminated the contract.

*Appeal from Green District Court.*—Hon. F. M. Powers, Judge.

### Saturday, April 9, 1910.

This action was begun at law to recover upon a bank check drawn by defendant and on which payment had been refused. The defendant filed answer denying liability and pleading an affirmative defense, with cross-petition asking that the check sued upon be held void. On motion the cause was tried as in equity. There was a decree for the plaintiff, and defendant appeals. The facts material to a disposition of the appeal are sufficiently stated in the opinion.—*Reversed.*

*W. W. Turner* and *Wilson & Albert,* for appellant.

*Woodin & Ayres* and *Gallaher & Graham,* for appellee.

Weaver, J.—The petition alleges no more than that on a given date defendant made and delivered to plaintiff his check on the Bank of Dana for $320, and that on

presentation payment was refused and check duly protested, wherefore judgment is demanded for said sum of $320, with interest and expenses of protest. For answer defendant admits making the check, and says it was made and delivered as part of an offer by him for the purchase of a tract of land from plaintiff, but that plaintiff refused said offer and demanded that defendant take the land on other and different terms than he had proposed or offered; that he (defendant) refused said demand and refused to make the purchase on the terms so prescribed, with the result that no contract or agreement was ever in fact made, and he became entitled to a return of his check, on which there is not and never has been anything due the plaintiff. In reply, the plaintiff avers that a valid contract of purchase was entered into, that it accepted the defendant's offer for the lands, and is able, ready, and willing to fulfill said agreement on its part.

The facts, as developed by an examination of the record, are, substantially, as follows: The defendant visited the state of Wyoming, and there had some talk with the plaintiff concerning the purchase of a certain tract of land. The negotiations then had between them resulted in the signing and delivering by defendant to plaintiff of a written application or offer in the following form:

The Federal Land & Securities Company. Application for Land. I, the undersigned, hereby apply to purchase the N. E. quarter of section 27, township 13, range 61, county of Laramie, Wyoming, containing one hundred and sixty acres (subject to legal public roads and mineral rights as reserved by the Union Pacific Railroad Company), for which I agree to pay $2,000 as follows, $320 in cash, $160 March 1, 1909, and the balance to be paid on the crop payment plan. All deferred payments to draw interest from the date of this application, at the rate of six per cent. per annum, payable annually. Make papers in the name of J. W. Hatch, county of Greene, state of Iowa. Post office address, Dana, Iowa. July 30, 1908.

J. W. Hatch. This application is taken subject to approval of the board of directors of the Federal Land & Securities Company.

With this application he made and delivered to the plaintiff the check now in suit, and returned to his home in Iowa with the understanding between the parties that, if the offer was accepted, a formal written contract upon the proposed terms would be prepared by plaintiff and forwarded by mail to the bank at Dana, where it could be examined and executed by the defendant. It is the claim of plaintiff that the offer was in fact accepted immediately, and before defendant left Wyoming, but the evidence does not bear out the assertion. Thereafter plaintiff did prepare the draft or form of contract in alleged conformity with the proposed terms and forwarded it to the bank. Upon notice of such action, defendant visited the bank, examined the contract so tendered him, and refused to accept or execute it, and directed the bank to refuse payment of the check. This refusal was based upon the claim that the contract so demanded of him was not the one he had offered or proposed to make, but differed therefrom in many material respects. Whether this contention on defendant's part is sustained by the record is the decisive question in the case. It will be observed that the application or offer to purchase is directed to the Federal Land & Securities Company, and the proposition is to purchase the land at the price of $2,000, of which $320 would be paid in advance, $160 on March 1, 1909, and the remainder on "the crop payment plan." The paper prepared by the plaintiff as embodying its conception of the contract is a very elaborate affair, entering into a great variety of detail, and filling more than six printed pages of the record. It purports to be a contract between the defendant as purchaser, and one C. H. Ainley of California, as seller. The following are a few illustrative examples of the stipulations to which

it required the defendant's assent: (a) To cultivate and seed, in certain named crops, a given number of acres of land each year; (b) to deliver one-half of such crop each year to said Ainley at the nearest market; (c) to give the seller a lien on all crops raised; (d) to neither sell nor mortgage his own share of the crop until he had delivered the seller's share and received his written receipt therefor; (e) to make no assignment, sale, or pledge of the premises or of the contract without the written consent of the seller; (f) to make time the essence of the contract to empower the seller to declare a forfeiture thereof on failure to perform any stipulation of the agreement, and that in such case all payments made and all improvements placed upon the land should be forfeited to the seller.

A glance at these papers discloses that, aside from a reference in the first to two cash payments and to a wholly undefined "crop plan" (from which we may perhaps infer that the parties expected to agree upon terms enabling the defendant to pay the remainder of the purchase price by delivering to the plaintiff some share or all of the crops raised on the land), there is not in the written proposal the slightest hint or suggestion of the multitudinous conditions in the form of contract which plaintiff prepared and submitted for the signature of defendant. Even if it should be conceded (which cannot well be done) that the expression "crop payment plan" is sufficiently definite to cover the plan of crop payments set out in the proposed contract, it contains not a word to indicate any purpose on the part of defendant to surrender or limit his right to sell and otherwise exercise the ordinary privileges of ownership over his own share of the produce; or to deny himself the right to dispose of his interest in the land except upon consent of the seller; or to impose upon his contract rights the liability to forfeiture and risk the loss of all payments and improvements if by any chance

1. CONTRACTS FOR THE SALE OF REAL ESTATE: offer to purchase: terms of acceptance.

there should be a default in the performance of a single item of his agreement. When, therefore, the plaintiff presented a contract containing these and many other wholly new stipulations in no manner mentioned or foreshadowed in the defendant's offer of purchase, the latter was manifestly within his right in refusing to honor the check which accompanied the offer. To convert an offer of purchase into a contract of purchase, the acceptance must be of the very terms proposed, and if the seller undertakes to qualify his acceptance, or to impose upon the buyer additional terms or conditions, there is no contract which either may enforce, for the minds of the parties have never met. *Baker v. Johnson County,* 37 Iowa, 186; *Batie v. Allison,* 77 Iowa, 313; *Stennett v. Bank,* 112 Iowa, 273.

It is argued, however, that, even though defendant was justified in refusing to execute the writing, the original paper constitutes a complete contract of purchase, and was therefore a sufficient consideration for the check in suit. But very manifestly this is not the case. In the first place, the language of the instrument admits of no other construction than that of a mere offer, and contains an express declaration by which it. was to be submitted to the approval of a "board of directors." The plaintiff's witness Beatty, one of its board of directors, undertakes to say in a general way that the application was "approved," not by the board of directors, but by an executive committee of such board. Moreover, his statement to that effect is a mere conclusion; no fact from which the court could properly find an acceptance being shown.

2. SAME: acceptance and and approval of offer to purchase.

Nor was there any notice to defendant of the alleged acceptance, unless we are to treat as such the plaintiff's letters to him giving notice that the form of contract had been sent to the bank and demanding that he execute it and proceed with the purchase on the terms and conditions therein named, which terms and conditions plain-

tiff insisted were in strict accord with the application—
a position which as we have seen is clearly untenable.

Not only the language of the application, but the
words, acts, and conduct of the parties, as shown, without
substantial dispute demonstrate that both parties expected
and intended that if the offer was accepted
a formal written contract should be executed,
in which the details of the transaction should
be agreed upon and the obligations of both parties definitely
fixed. Now, while it is true, as appellee argues, that a
binding contract for the purchase of land may exist, if
such be the intention of the parties, even where there is
an understanding or expectation that a further and more
formal writing shall be executed, yet this is the case only
where the terms have been definitely settled in other writ-
ings, memoranda, or correspondence, or have been settled
by oral agreement which in some manner has been taken
out of the statute of frauds. The leading case cited by
appellee, *Sanders v. Pottlitzer,* 144 N. Y. 209 (39 N. E.
75, 29 L. R. A. 431, 43 Am. St. Rep. 757), states the
limits of the rule. It was there found that by correspond-
ence the parties had settled all the terms and conditions
upon which a purchase of property was to be made, and,
although it was intended to reduce it to more formal
shape, they were held bound by the agreement. But in
so holding the court is careful to say that, in such case,
"neither party is entitled to insert in the paper any ma-
terial condition not referred to in the correspondence."
Where, however, it is a part of an understanding in which
parties' minds have met upon the terms of a sale that
the agreement shall be reduced to writing and executed
by both parties before entering upon its performance, it
is the general rule that no contract is in fact effected until
the writing is made and executed. *Weitz v. Ind. Dist.,*
79 Iowa, 427; *Glass Works v. Barnes,* 86 Hun, 374 (33
N. Y. Supp. 508); *Sparks v. Pittsburg Co.,* 159 Pa. 295

*Margin note:* 3. SAME: when a contract becomes binding.

(28 Atl. 152); *Bourne v. Shapleigh,* 9 Mo. App. 64; *Gullich v. Alford,* 61 Miss. 224.

The fact, too, that the first writing in this case is uncertain and indefinite, as to some material terms, is a strong indication that it was considered as a mere pre-

4. SAME.

liminary to a contract in which these matters should be adjusted and agreed upon. See, in point, *Methudy v. Ross,* 81 Mo. 481. Where neither the offer nor the acceptance settle certain necessary details, and where it is understood that a written contract shall be made embodying such matters, there is no contract until such writing be executed. *Jersey City v. Brown,* 32 N. J. Law, 504; *Bryant v. Ondrak,* 87 Hun, 477 (34 N. Y. Supp. 384). This, as we view the facts, is precisely the situation of the parties to this case, and that no enforceable contract was ever made between them.

There is still another feature of the case having a substantial bearing upon the rights of the parties. The application or offer was made by the defendant to the

5. SAME: acceptance by a third party.

corporation, the Federal Land & Securities Company. The so-called "acceptance" was by that corporation; but it tenders to defendant and insists upon his accepting a contract of sale from C. H. Ainley, of whom, so far as appears from the record of the prior negotiation, no mention had ever before been made between them. Upon the face of the facts disclosed, defendant was dealing with the plaintiff alone, and the latter could not require him to enter into contract relations with a third person unless he chose to do so.

Without pursuing the discussion further, we have to say that we are satisfied that, under the conceded facts, plaintiff should not be permitted to recover upon the check, and that a cancellation of said instrument should have been decreed as prayed by the defendant.

The decree appealed from is therefore reversed. Decree accordingly may be entered in this court within thirty

days at the election of the defendant. Otherwise cause will be remanded to the district court for decree in harmony with this opinion.—*Reversed*.