Argued July 17, decided July 30, rehearing denied Oct. 1, 1912.

## WILLIAMS *v.* BURDICK.

(125 Pac. 844: 126 Pac. 603.)

**Sales—Offer and Acceptance.**

1. A dealer offered to a broker a car load of prunes, grade 30s, at a certain price. The broker telegraphed the dealer: "As per your message, R. C. W. offers f. o. b. three and one-fourth car thirty-forty." The 30-40s were a different grade from 30s. In answer to this offer, the dealer wired, "Accept W.'s mailing contract hold 30s firm three and three-eighths," and, by letter sent at the same time, stated that he would not sell any more 30-40s, unless at a certain price. Held, that the statement in the telegram as to mailing contract referred to prunes of the grade 30s, and, as the offer to purchase was 30-40s, there was a completed contract by telegram, though a contract was not signed.

**Sales—Offer—Communication of Acceptance—Mode.**

2. Where an offer to buy is made by wire, it may reasonably be presumed that an answer is invited by that means of communication.

**Contracts—Contract by Correspondence—Construction.**

3. Where parties exchanged telegrams and a letter, pending negotiations for a contract, the question whether or not they intended to effect a contract before signing a writing expressing its terms was to be determined from the entire correspondence.

**Contracts—Offer of Acceptance—Communication and Acceptance of Offer.**

4. Where a party has, by letter or telegram, signified his acceptance of an offer, the mail or telegraph is held to be his representative, so that when his letter or message, properly addressed and prepaid, is entitled to be sent forward the minds of the parties have met, and the contract is complete.

**Contracts—Offer and Acceptance—Construction.**

5. Where the mail or telegraph is treated as the agent of the party making an offer, a telegram of acceptance, not expressly referring to a contemporaneously written letter for further details, or by way of explanation, so as to impart notice that required the delivery of the letter before the telegram could be safely acted upon, the telegram and the letter should not be construed in pari materia.

**Appeal and Error—Harmless Error—Admission of Evidence.**

6. In an action tried by a court without a jury, the receipt of incompetent evidence, properly excepted to, is not prejudicial, unless injury has necessarily resulted.

## ON PETITION FOR REHEARING.

**Appeal and Error—Agreed Statement.**

7. A stipulation, signed by the attorneys of the parties, which provides that the matters detailed therein, apparently including everything considered material, shall stand in lieu of the facts, is, when attached to the bill of exceptions, an agreed statement of facts incorporated in the bill of exceptions, and is a part of the judgment roll and constitutes the findings of facts.

**Contracts—Mutual Assent of Parties—Language of Parties.**

8. The apparent mutual assent of the parties essential to the formation of a contract must be gathered from the language employed by them.

**Contracts—Execution—Reduction to Writing.**

9. Where parties to a contract reach an understanding, but intend that a formal writing shall be executed before they are bound, the execution of a formal writing is essential.

From Multnomah: John P. Kavanaugh, Judge.

Statement by Mr. Justice Moore.

This is an action by Arthur P. Williams, Edwin H. Sayre, William L. Juhring, and Francis J. Dessoir, partners under the firm name and style of R. C. Williams & Company, against A. C. Burdick & Co., Inc., to recover damages for the breach of an alleged agreement. It is stated in the complaint that at all the times mentioned therein the plaintiffs were partners as R. C. Williams & Co., and the defendant was a corporation; that on June 14, 1910, a contract was effected, whereby the defendant agreed to sell and deliver to plaintiff, at some point in Oregon, in October of that year, f. o. b., a car of Italian prunes of the grade known to the trade as "30s-40s," for which the plaintiff stipulated to pay three and one-fourth cents per pound, bulk· basis; that the defendant refused to deliver any prunes to plaintiffs, who were at all times ready, able, and willing to pay therefor the stipulated sum; that in Oregon, in October, 1910, the market price of prunes of the kind and grade specified was four and three-fourths cents per pound, bulk basis; and that by reason of the breach of the agreement plaintiff sustained damages to the extent of $562.50, for which sum judgment was demanded, with interest from October 31, 1910.

The answer having denied each allegation of the complaint, the cause was tried without a jury, resulting in a judgment for plaintiffs as demanded, and the defendant appeals.                                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Arthur ·P. Tifft and Mr. H. Johnstone,* with an oral argument by *Mr. Tifft.*

For respondents there was a brief over the names of *Messrs. Snow & McCamant,* with an oral argument by *Mr. Wallace McCamant.*

MR. JUSTICE MOORE delivered the opinion of the court.

It appears from the bill of exceptions that the defendant is a corporation, engaged in buying and selling dried fruits, its office being in Portland, Oregon, from which city it sent a telegram, June 13, 1910, to M. W. Houck & Bro., commission merchants at 189 Franklin street, New York, and, referring in the message to such edible fruit then growing in Oregon, stated in part: "Offer one straight car fine large thirties October shipment at three and half base." The next day these brokers, alluding to plaintiffs, wired the defendant in part as follows: "As per your message R. C. Williams offers f. o. b. three and one-fourth car thirty-forty twenty extra." Replying to this message on the same day, the defendant telegraphed the brokers: "Accept Williams mailing contract hold thirties firm three three-eighths." At the same time the defendant wrote the brokers a letter, from which an excerpt is taken, viz.:

"In accordance with the wires exchanged by us today we enclose you a contract for R. C. Williams & Co. We signed the yellow one for the buyer and please have them sign the blue one for us and return it promptly. We hardly know how we came to sell this car so cheap, as there is no profit in it for us. We did business with Mr. Williams last year, and wanted to hold their trade, but we do not care to sell any more cars of 30-40s, unless we get 3⅜ cents, bulk base."

Accompanying this letter was the draft for a formal contract containing various specifications. The defendant, on July 1, 1910, wrote Houck & Bro. in part as follows:

"We have not received the contract we sent you for R. C. Williams & Co. Please let us know if he accepts or objects, so that we will be in position to sell the car in case he does not accept."

After the exchange of several letters in which references were made to the forms of dried fruit contracts

adopted by the respective parties, and the refusal of each to sign the contract prepared by the other, the plaintiffs, on August 8, 1910, wrote the defendant, saying in part:

"As far as the contract goes, we have got all the contract we want. We have copy of your telegram. We have copy of telegram to you, and we have got the acceptance of car load of 30-40 prunes. * * You have sold us a car of 30-40 prunes. Ship same along; we will pay you for them and there will be absolutely no trouble."

The defendant finally wrote the plaintiffs, saying in part:

"Your refusal to sign our contract closed the intended sale on our part, and as there is no contract we will ship you no prunes."

The chief inquiry to be considered on this appeal is whether or not the defendant's telegram of June 14, 1910, to Houck & Bro., in response to their message of the plaintiffs' offer, evidenced a meeting of the minds of the parties and effected a contract. The defendant's counsel maintain that the message contained a qualified acceptance of the bid, and proposed a formal draft evidencing the agreement, but, the overture having been declined by plaintiffs, an error was committed in rendering a judgment in their favor. The error alleged relates to the conclusion of law, which, it is argued, is not deducible from the finding of facts as made by the trial court, in respect to which there is no controversy.

1. It was stated at the trial of this appeal that dried Oregon prunes are graded by machinery, and that the term "fine large thirties," referred to in the defendant's telegram of June 13, 1910, means such a variety of desiccated fruit that 30, or less, weigh a pound, and that the market value increases with and depends upon the size of the prunes. The "thirty-forty" assortment, mentioned in the broker's message, is not so large as "thirties," and for that reason it is less valuable in the market than the

latter. The offer of R. C. Williams & Co., as detailed in the broker's telegram of June 14, 1910, specified the name of the proposed purchasers, the price they were to pay, the quantity and the quality of the dried prunes desired, which were to be placed, without expense to them, on a car ready for shipment. In response to such offer, it will be remembered that the defendant wired Houck & Bro. as follows: "Accept Williams mailing contract hold thirties firm three three-eighths." This telegram having referred to "thirties," while the offer to purchase related to 30-40s, it will be seen that the message, last quoted, alluded to a quality of dried prunes not embraced in such offer. Whether the "mailing contract" referred to in the defendant's telegram related to "thirties" or to "30-40s" cannot be determined from an inspection of the message. Any doubt on that subject, however, was resolved when the letter accompanying the contract reached New York by mail several days after the receipt of the defendant's telegram.

2, 3. The offer to purchase having been made by wire, it may reasonably be assumed that an answer was invited by that means of communication. Clark, Cont. (2 ed.) 26. If the parties intended to effect an agreement, it was consummated June 14, 1910, when the defendant telegraphed the brokers to accept the offer they had received. Bishop, Cont. (2 enlarged ed.) § 328. Had the message directed an assent to the bid, provided the plaintiffs' firm name was appended to the contract sent by mail, the supposed condition would necessarily have prolonged the negotiations and constituted a new proposal, which would not have been effective until complied with. Bishop, Cont. (2 enlarged ed.) § 323. When the evidence tending to establish an agreement consists of telegrams or letters sent to and received by the respective parties, their entire correspondence on the subject, pending the negotiations, affords the means of determining whether or not they

intended to effect a contract before signing a writing expressing its terms.

4. Based on this rule, it is contended that the defendant's telegram and letter, having been written at the same time, should be construed together. In order to protect the rights of a party who has, by letter or telegram, signified his acceptance of an offer, the means of transmitting the assent is held to be the representative of the other party, so that when the letter or message, properly addressed, with charges or postage prepaid, is delivered to the agent, so as to entitle it to be sent forward, the minds of the contracting parties have met, and an agreement is effected. 7 Am. & Eng. Enc. Law (2 ed.) 135; 9 Cyc. 295; *Tayloe* v. *Merchants' Fire Insurance Co.,* 9 How. 390 (13 L. Ed. 187).

5. Where the United States Postoffice Department and a telegraph company are thus treated as the agents of the party making the offer, fair dealing demands that, unless a telegram expressly refers to a contemporaneously written letter for further details, or by way of explanation, so as necessarily to impart notice and to require a delivery of the letter before the party to whom it is addressed can safely act upon the telegram, the message and the letter should not be construed *in pari materia.* Any other rule might impose damages upon the party receiving a telegram containing an unqualified acceptance of an offer for relying upon the information thus obtained, since by doing so he might incur obligations to other parties in respect to the subject-matter of the contract that would be burdensome; or, if he could not act upon the telegram until sufficient time had elapsed to enable the delivery of the letter qualifying the acceptance stated in the telegram, needless delay in the transaction of business would inevitably ensue. In the case at bar, the telegram did not make such express reference to the letter as necessarily to constitute the latter a part of the former, or

to impart notice. No error was committed by the trial court in refusing to interpret the telegram and the letter as parts of the same affair.

Prior to the receipt of the defendant's telegram of acceptance, the plaintiffs in their negotiations to purchase prunes had not alluded to the execution of a formal writing to evidence an executory agreement. Thereafter each party insisted, without avail, that the form of contract respectively submitted should be subscribed by the other party, until August 8, 1910, when, it will be kept in mind, the plaintiffs, referring to the telegrams that had been exchanged, wrote the defendant:

"We have got all the contract we want. * * You have sold us a car of 30-40 prunes. Ship same along; we will pay for them and there will be absolutely no trouble."

In stating the rule for determining the intent and the legal mode of expressing it, whereby the terms of an agreement have been assented to, a text-writer observes:

"Where the parties make the reduction of the agreement to writing and its signature by them a condition precedent to its completion, it will not be a contract until that is done, and this is true although all the terms of the contract have been agreed upon. But, where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing will not negative the existence of a present contract." 7 Am. & Eng. Enc. Law (2 ed.) 40.

In *Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209 (39 N. E. 75: 29 L. R. A. 431: 43 Am. St. Rep. 757), it was determined that letters and telegrams constituting an offer and acceptance of a proposition, complete in its terms, might create a binding contract, although there was an understanding that the agreement should be expressed in a formal writing, and one of the parties afterwards refused to sign such an agreement without material modifications. The legal principle thus announced, illustrated, as it is, by the notes to that case,

is adopted as controlling herein, without adverting to or commenting upon the many cases cited by defendant's counsel in their able and exhaustive briefs.

In the case at bar, neither party was obliged to assent to the terms of the formal, written contract desired by the other party; but after the negotiations terminated each was bound by the offer and its unqualified acceptance.

6. Error is assigned in the admission, over objection and exception, of evidence, which, it is asserted, was incompetent. In an action tried by a court without a jury, the receipt of incompetent evidence, properly excepted to, is not prejudicial, unless injury has necessarily resulted. *Taffe* v. *Smyth*, 62 Or. 227 (125 Pac. 308).

Believing that such consequences did not follow, and that a fair trial was had, the judgment should be affirmed; and it is so ordered.                                    AFFIRMED.

--------

Decided October 1, 1912.

## ON PETITION FOR REHEARING.

(126 Pac. 603.)

MR. JUSTICE MOORE delivered the opinion of the court.

A petition for a rehearing criticises a statement found in the former opinion, to the effect that the errors relied upon for a reversal of the judgment related to the conclusions of law, and that there was no controversy respecting the findings of fact. It is contended that such declaration is incorrect, and that the entire dispute in this court related to the findings of fact, in support of which no legal evidence was offered.

7. The abstract sets forth what was supposed only to be a general summary of the findings of fact, not one of which is quoted as such. Attached to the bill of

exceptions is a stipulation, signed by the attorneys for the respective parties, in substance that the matters detailed therein should stand in lieu of the facts. The matters thus referred to consist of copies of telegrams, letters, forms of contracts, etc., apparently including everything that was considered material. This agreed statement of facts was incorporated in the bill of exceptions, and thus became a part of the judgment roll, whereby the recital constitutes the findings of fact properly involved. *Frush* v. *East Portland*, 6 Or. 281; *Moody* v. *Richards*, 29 Or. 282 (45 Pac. 777). No findings of fact by the trial court were necessary, and the chief inquiry presented by the appeal is the conclusion of law whether or not a contract was consummated by the exchange of telegrams. The part of the former opinion adverted to was believed to be true when first expressed, and a careful re-examination of the matter has not changed the original view in that particular.

8. It is maintained that the undisputed facts of the case show negotiations only which cannot be construed into a complete contract; and, this being so, the judgment should have been reversed. The apparent mutual assent of the parties, which is essential to the formation of a valid agreement, is to be gathered from the language that they have employed. Thus a text-writer, in discussing this subject and referring to the case of *Raffles* v. *Wichelhaus*, 2 H. & C. 906, says:

"The defendant agreed to buy, and the plaintiff agreed to sell, a cargo of cotton, 'to arrive ex Peerless from Bombay.' There were two such vessels sailing from Bombay, one in October; the other in December. The plaintiff meant the latter, the defendant the former. It was held that the defendant was not bound to accept the cotton. It is commonly said that such a contract is void, because of mutual mistake as to the subject-matter, and because, therefore, the parties did not consent to the same thing. But this way of putting it seems to be misleading. The law has nothing to do with the actual state

of the parties' minds. In contract, as elsewhere, it must go by externals, and judge parties by their conduct. If there had been but one 'Peerless,' and the defendant had said 'Peerless' by mistake, meaning 'Peri,' he would have been bound." Holmes' Com. Law, 309.

In the case at bar, the defendant telegraphed brokers in New York City to sell for him a particular variety of dried prunes at a specified price. These agents wired back that R. C. Williams, the plaintiffs, would pay a less sum for a carload lot of inferior quality of such fruit. Upon receipt of the latter message, the defendant again telegraphed the brokers, as follows: "Accept Williams mailing contract hold thirties firm three three-eighths." The "thirties" thus referred to are a better quality of dried prunes than the sort which the plaintiffs offered to buy; and the term "mailing contract," used in the message, may as well have applied to the "thirties" which were to be sold as to any other quality. Since it appears from the language employed in the telegram quoted that no positive conditions were attached to the defendant's declaration to the agents to assent to the bid, the negotiations terminated with such message, which contained an unqualified acceptance of the plaintiffs' offer.

9. It is argued that the case of *Sanders* v. *Pottlitzer Bros. Fruit Co.,* 144 N. Y. 209 (39 N. E. 75: 29 L. R. A. 431: 43 Am. St. Rep. 757), cited in the former opinion, has no application to the facts involved herein, because in that case it is conceded that a contract was consummated without any further written evidence thereof. The legal principle asserted in that case, elucidated by the notes thereto, was considered controlling only to the extent of the converse rule noted, that, though the parties may have reached an understanding respecting a contract, yet, if it appeared that a formal writing should be executed before they were to be bound, the intention governed. *Bourne* v. *Shapleigh,* 9 Mo. App. 64. Since, however, in the case at bar no such intention was mani-

fested, the contract was effected by the defendant's direction to the brokers to accept the plaintiffs' offer.

We adhere to the former opinion and the petition is denied.　　　　　　　AFFIRMED: REHEARING DENIED.