NEILSON & KITTLE CANNING CO. *v.* F. G. LOWE & CO.

(*Nashville.* December Term, 1923.)

1. **APPEAL AND ERROR.** Exclusion of evidence not affecting result held not reversible error.

In an action to recover damages for breach of contract to purchase a car of canned fish, the exclusion of evidence offered by buyer of a local custom that the buyer of canned goods does not consider the contract closed until a formal contract has been signed between the parties, while the evidence was probably competent, was not reversible error, where its weight was insufficient to affect materially the result. (*Post, p.* 563.)

2. **CONTRACTS.** Rule of practical construction applicable, unless contract is ambiguous.

The rule of practical construction has no application, unless the terms of the contract are ambiguous or the conditions entering into its making are so involved as to give rise to uncertainty with respect to the intention of the parties. (*Post, pp.* 563, 564.)

Case cited and approved: Canton Cotton Mills v. Little Bros. et al., 257 S. W., 398.

3. **CONTRACTS.** Bona-fide intent to come to definite agreement should be construed to constitute contract.

In determining whether the facts present the elements of a contract, if a bona-fide intent on both sides to come to a definite agreement is shown, it should be construed, if possible, to constitute an agreement rather than to defeat one. (*Post, p.* 564.)

Case cited and distinguished: Empire Mfg. Co. v. Morris, 73 N. J. Law, 602.

4. **CONTRACTS.** May be made by letter or telegram.

A binding contract may be entered into by letter or telegram. (*Post, pp.* 564-568.)

149 Tenn.—36.

5. **SALES.** Request of seller for signed contract, after acceptance of buyer's order, held not a construction that no contract up to that time had been completed.

Where seller unconditionally accepted buyer's order for a car of canned fish by letter and telegram, the request of seller, following the telegraphic and mail correspondence, for a signed contract, did not constitute a practical construction on his part that no contract had, up to that time and until the signing of the contract by buyer, been completed; the original negotiations not having clearly contemplated or provided for the execution of such writing as a condition to the completion of the contract. (*Post, pp.* 564-568.)

6. **CONTRACTS.** New negotiations cannot affect completed contract unless resulting in new contract.

After a contract has been completed by means of correspondence, subsequent letters opening new negotiations cannot affect it, unless they result in a new contract. (*Post, pp.* 564-568.)

Cases cited and distinguished: Williams v. Burdick, 63 Or., 41; Greenwood G. C. v. Canadian Mill, 77 S. C., 219.

7. **SALES.** Cash terms apply in absence of provision in contract.

Where the details of terms of payment are not provided for in a contract, cash terms will apply. (*Post, p.* 568.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

PITTS & MCCONNICO, for appellant.

JEFF MCCARN, D. W. CUNNINGHAM and PRESTON VAUGHN, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This bill was filed to recover damages for breach of a contract to purchase a car of canned tuna fish, and is here on appeal by defendant, Lowe & Co., from a decree awarding damages. The first assignment complains of the exclusion by the chancellor of evidence offered by defendant of a local custom that the buyer of goods of this character does not consider the contract closed until a formal contract has been signed between the parties. While this testimony was probably competent, as bearing upon the question of the state of mind or intention of the defendant, we are of opinion that its exclusion was not reversible error, because its weight is insufficient to affect materially the result, as hereinafter indicated.

It is insisted by the second assignment that there was no completed contract, and this is the determinative issue. The defendant resides in Nashville, and the complainant in California, and the negotiations were conducted largely through merchandise brokers in Memphis, by telegraphic and mail correspondence and telephone.

The rule of practical construction is invoked and the case recently decided by this court of *Canton Cotton Mills* v. *Little Brothers et al.,* 257 S. W., 398, among other authorities, is relied on. This rule has no application unless the terms of the contract are ambiguous, or the conditions entering into its making are so involved as to give rise to uncertainty with respect to the intention of the parties.

In the Mills Case, supra, while previous correspondence tended strongly to indicate a completed contract of sale and purchase, there was some ambiguity, and, moreover, the letter of final confirmation sought to vary materially the terms of the correspondence agreement.

If the correspondence and other communications establish with reasonable clearness a contract, then the rule invoked is inapplicable. And in giving construction to the facts presented, the rule laid down in the following language by Mr. Justice PITNEY, in *Empire Manufacturing Co.* v. *Morris,* 73 N. J. Law, 602, 65 Atl., 450, should be observed:

"Such a construction should be adopted, if possible, as to constitute an agreement rather than defeat an agreement."

It is well settled that a binding contract may be entered into through the medium of correspondence by letter or telegraph. Without detailing from the record, it appears that defendant, Lowe & Co., opened negotiations for this purchase through Memphis brokers, agents of complainant; that defendant authorized the brokers to make the purchase of a car or less of No. 1 potted tuna at $6.25 a case delivered at Nashville, and that by telegraph, confirmed by letter, complainant accepted this order, of which the brokers notified defendant promptly, this being September 10, 1918. It further appears that, in a letter dated September 13th, addressed to complainant, defendant recognized and approved this confirmation in the following language:

"Your brokers, Jno. T. Leonard & Sons, have confirmed us through their Memphis office for shipment through

you one minimum car No. 1 round can, Potted Tuna Fish, at $6.25 per 4 doz. cans, delivered Nashville. We write this to ask you to send us at once by express charges collect, one case of these goods for us to use as samples to take orders by, and would also ask that you submit us your several different styles of labels, that we may make a selection that appeals to us most."

Thus a firm contract would seem to have been made, but upon receipt of the samples which had been requested, defendant wired complainant, on September 28th:

"Samples received and find not what we expected. Cancel order."

The insistence of defendant upon his right to thus cancel is rested upon the fact that, following the confirmation by wire, complainant transmitted through its Memphis agents to defendant a form of contract in writing, signed by the complainant, for execution by the defendant. This writing did not vary the essential terms of the sale, as already negotiated and confirmed, but its concluding clause was as follows:

"This contract, to be binding upon the seller, must be affirmed in writing by seller, who, however, shall not be responsible for the performance thereof, unless a copy, properly signed by the buyer, is delivered to the seller within 10 days of the date thereof."

These contract forms were inclosed to defendant in a letter from complainant dated September 12, 1918, in which complainant said:

"We thank you for your order received from our broker, J. T. Leonard & Sons, for 1 carload of potted tuna fish at $6.25 per case, delivered your city, terms 1½% sight draft, bill lading attached.

"We have today sent the contract to our broker, and will ask you kindly as soon as you receive same, to have it signed and returned to him," etc.

The day following the sending of the cancellation telegram, defendant received from the brokers a letter urging the execution of this contract and prompt forwarding of a copy, and stressing strongly its importance. It appears that complainant proceeded at once, following the telegraphic correspondence, to fill the order, which was special and of unusual size, and that at the time of the sending of the cancellation message the larger part of the packing of the cans had been completed, thus clearly indicating complainant's understanding that the contract had been closed and a purpose to perform.

As before indicated, the determinative question of whether or not the request or demand of complainant, following the telegraphic and mail correspondence, for a signed contract, constitutes a practical construction on the part of complainant that no contract had up to that time, and until the signing of the contract by the buyer, been completed.

It is insisted for complainant, that the contract had already been closed by telegraph and mail and that no subsequent correspondence, or demand for the execution of a formal contract, could affect the situation; also that there was no intention on its part to do so, but that the formal contract was requested in pursuance thereof.

The general rule is well supported that—

"After a contract has been completed by means of correspondence, subsequent letters opening new negotiations cannot affect it unless they result in a new contract." 13 C. J. section 114, p. 299.

We think there can be no doubt that a demand for the execution of a formal contract after an agreement has been definitely made between the parties, either orally or by correspondence, could not have the effect of releasing either party, unless the original negotiations had clearly contemplated or provided for the execution of such a writing as a condition.

"Where there is nothing in a telegram of acceptance to show that a letter will follow explaining the terms of the contract, a letter written after the acceptance has been delivered to the telegraph company will not be considered." 13 C. J. section 116, p. 301; *Williams* v. *Burdick,* 63 Or., 41, 125 Pac., 844, 126 Pac., 603; *Greenwood G. C.* v. *Canadian Mill,* 77 S. C., 219, 57 S. E., 867.

And the reason for the rule, which is applicable here, is thus stated:

"Any other rule might impose damages upon the party receiving the telegram containing an unqualified acceptance of an offer for relying upon the information thus obtained, since by doing so he might incur obligations to other parties in respect to the subject-matter of the contract that would be burdensome; or, if he could not act upon the telegram until sufficient time had elapsed to enable the delivery of the letter qualifying the acceptance stated in the telegram, needless delay in the transaction of business would inevitably ensue." *Williams* v. *Burdick,* 63 Or., 41, 125 Pac., 844, 126 Pac., 603.

Certainly then it would seem that, after the passing, not only of telegrams, but letters of confirmation, neither party could modify or vary, cancel or rescind, the contract already binding, or exact any requirement not already provided for.

On the facts presented by this record, we are constrained to hold with the chancellor that there was a completed contract between these parties, and, while it is very plausibly insisted that the recital in this submitted contract, taken together with the letter of complainant to the brokers calling for its execution, indicates a construction on the part of complainant that the contract was not complete, we are of opinion that it had been previously so binding agreed upon that it might have been enforced against the complainant, whatever his construction. It follows that the defendant was also bound.

It is suggested that the detail of terms of payment had not been originally provided for definitely, but, in the absence of express provision, cash terms would have applied. This omission is not, therefore, material; and it appears that the terms recited in the tendered formal contract extended credit of which defendant could not complain. It follows that this assignment must therefore be overruled.

With respect to the third assignment, we deem it necessary only to say that, upon examination of the bill, including its prayer, we are of opinion that it is sufficient to support the decree of the chancellor awarding damages for the unpacked goods, as well as those that had been packed before receipt of the telegram of cancellation.

The decree of the chancellor must be affirmed.