NATHAN KRIS v. E. E. PATTISON AND OTHERS.[1]

April 25, 1924.

No. 23,875.

**Conditional acceptance of letter containing offer not an enforceable contract.**

1. A letter, written by defendants proposing to sell a building and give a ground lease for a long term of years upon the terms and conditions set out, did not become an enforceable contract by plaintiff's appending thereto the following: "Accepted: 8/8-22: Nathan Kris, providing conditions of lease are satisfactory."

**Language unambiguous.**

2. The language of the acceptance is so clear and unambiguous that pleading or proof is unavailing to establish that the parties understood it to mean an absolute and unconditional acceptance.

**Specific enforcement impossible because of omissions.**

3. The letter on its face is so indefinite and lacking as to import-

[1]Reported in 198 N. W. 541.

ant matters that would necessarily have to be specified and embodied in the final contract or lease contemplated that, even if accepted unconditionally, it could not be specifically enforced. And unless such a contract was made that it could be specifically enforced against the owners, had they signed it, it will not serve as a basis for the recovery of damages against defendants for having signed it without authority from the owners.

Action in the district court for St. Louis county to recover $90,000 for false representations. From an order, Magney, J., sustaining the demurrer of C. R. Pattison and Pattison Realty Company and the demurrer of E. E. Pattison and H. H. Pattison, plaintiff appealed. Affirmed.

*Goldberg & Cohen* and *Warren E. Greene*, for appellant.

*Lewis & Hunt, Jaques & Hudson* and *Hanitch, Hartley, McPherson & Johnson*, for respondents.

HOLT, J.

The appeal is from orders sustaining demurrers to the complaint.

The action is brought to recover $90,000 as damages, because defendants, a corporation and its officers, without authority from the owners, entered into a contract to sell to plaintiff a certain building in the city of Duluth for $85,000, and lease the ground upon which it stands to him. The purported contract is attached to and made a part of the complaint, and is referred to therein as an option. It is in the form of a letter addressed to plaintiff; stating:

"Supplementing the various conversations between you and the writer, the following is a brief outline of the general terms to be embodied in the ninety-eight year lease between you and your associates, if you choose to have associates, and the William H. Pattison Estate on the property known as the New Jersey Building, and described as lots twenty (20) and twenty-two (22) in block five (5) Central Division of Duluth, Minnesota.

"The building will be sold to you for $85,000.00 on terms as follows: $20,000 cash, $5,000.00 of which is to be paid within six months of the date of the lease; $15,000.00 when the lease is

signed; $37,666.66 in equal semi-annual payments to begin one year from the date of the lease and to be fully paid up in eight years; $28,333.33 in equal annual payments beginning ten years from date of the lease to be fully paid in twenty-five years from date of the lease; all unpaid balances from time to time due to draw interest at the rate of six per cent until fully paid.

"The lease is to start as soon after this date as possible on the basis of 5% on $2,000.00 a front foot, and is to run for a period of forty-nine years with an option for an extension of forty-nine years. The lease is to contain the usual revaluation clause. The first re-valuation period to be ten years from the date of the lease, and from then on revaluation periods every ten years. The Pattison Estate agrees to pay the paving assessment on Superior Street and also their proportionate share of the 1922 taxes payable in 1923.

"It is also agreed that a one year free building period is to be allowed the lessee at any time they choose to erect a new building. All other conditions the same as the Marquit's lease, except that the option for extension of the lease at the end of the forty-nine year period, and that clause will be reversed so that the lease may be extended at your election.

"Also this lease is to contain rent insurance clause.

"Accepted: 8/8 22                    "Yours very truly,
"Nathan Kris, providing              Pattison Realty Company
"conditions of lease are                  "By I. J. Luder"
"satisfactory."

It is too plain for argument that the acceptance of the proposi-tions contained in the letter by plaintiff is, on its face, qualified or conditional, and the writing is not a concluded contract. But to overcome this obstacle the rule is invoked that the demurrers admit the allegations of the complaint, among which are these: "That the said acceptance was, and was then and there, understood to be by the parties hereto an unconditional acceptance of said option. That the language of said acceptance wherein the plaintiff said 'providing conditions of lease are satisfactory,' was, and was then

and there, understood by all the parties thereto to constitute a reiteration and insistence by the plaintiff and not otherwise, upon those terms in the said option wherein it was said that 'all other conditions the same as the Marquit's lease.'" A demurrer admits only what is well pleaded. 2 Dunnell, Minn. Dig. § 7542. The complaint specifically sets forth the precise language of the acceptance. This is so plain and unambiguous that neither pleading nor proof can make it more so. Counsel concedes that no evidence in support of the allegations could be received, if objected to. The very fact that the demurrers were interposed should be taken as an insistence from the beginning of the lawsuit that oral testimony be not admitted to vary or explain the clear unambiguous meaning of the acceptance.

But, passing the acceptance, the letter itself shows it to be nothing more than a mere step in the progress of negotiating a deal. Federal Land Bank & Securities Co. v. Hatch, 147 Iowa, 18, 125 N. W. 837; Woods v. Matthews, 224 Mass. 577, 113 N. E. 201; Water Com. of Jersey City v. Brown, 32 N. J. Law, 504; Goldstine v. Toleman, 157 Wis. 141, 147 N. W. 7. A formal agreement or lease between plaintiff and the owners is called for by the letter, but there is a noticeable absence of a definite agreement as to many matters of obvious importance that would have to be specified particularly and incorporated in the lease or final contract. A few only need be pointed out.

The purchase price of the building is stated as $85,000; but, adding the cash payment of $20,000 to the deferred payments called for, the amount is $86,000. The deferred payments run over a period of 25 years, wherein certain instalments fall due both annually and semiannually, but nothing is specified regarding the time of payment of the interest of six per cent. Whether such interest is to be paid annually, semiannually, or upon each instalment as it falls due, is of some importance where the principal is as large as here. The letter and acceptance are dated August 8, 1922. The lease is to start "as soon after that date as possible." This is indefinite. It is to be "on the basis of 5% on $2,000.00 a front foot." This must refer to the rent to be paid, and is the only reference to rent.

Again it must be noted that, from the lessor's as well as lessee's standpoint, the time for the payment of the rent is of prime importance in a lease. Nothing is found in the letter as to whether it is to be paid monthly, or yearly, or for any other period, or whether in advance or otherwise. And who shall pay the taxes and assessments is only to be gathered inferentially from this clause: "The Pattison Estate agrees to pay the paving assessment on Superior Street and also pay their proportionate share of the 1922 taxes payable in 1923." "The lease is to contain the usual revaluation clause. The first revaluation period to be ten years from the date of the lease, and from then on revaluation periods every ten years." Nothing is said as to who or how many are to revalue, nor how they are to be selected. Then the provision that "a one year free building period is to be allowed the lessee at any time they choose to erect a new building" is so indefinite that no court could specifically enforce the contract. Does it mean rent free for a year, or the postponement or remittance altogether of the instalment and interest on the purchase price of the building that might fall due during that year? And finally we find the provision that the lease is to contain "rent insurance clause." How much is the insurance to be, and is the lessee to pay the premium? Parol evidence may not supply omissions in contracts within the statute of frauds. Clampet v. Bells, 39 Minn. 272, 39 N. W. 495. Nor can defects be thus supplied. Taylor v. Allen, 40 Minn. 433, 42 N. W. 292.

Plaintiff relies on the reference to the Marguit's lease, but that lease is to govern only "all other conditions," and hence excludes the terms and conditions attempted to be stated in the letter, and as to some of which attention has been called of such incompleteness and indefiniteness that no court could determine the terms of a contract so as to compel specific performance. Unless this can be done, the alleged unauthorized contract cannot serve as a basis for a suit for damages against the one who negotiated or executed it. Some of the expressions in the letter may come under the definition of latent or patent ambiguities explainable by parol testimony, but most of the matters to which attention is above called relate to terms necessary to be specified in the contract and concerning

which as to time or amount there is no agreement. The demurrers were rightly sustained.

Order affirmed.