### TIPTON v. MILLER et al.*
### No. 10103.

Circuit Court of Appeals, Eighth Circuit.
Sept. 11, 1935.

*Rehearing denied Dec. 11, 1935.

E. R. Tipton, of Muscatine, Iowa (E. C. Nichols, of Muscatine, Iowa, and R. S. Milner, of Cedar Rapids, Iowa, on the brief), for appellant.

Robert J. Bannister, of Des Moines, Iowa, and Warren A. Drummond, of Kansas City, Mo. (Charno & Drummond, of Kansas City, Mo., and Stipp, Perry, Bannister & Starzinger, of Des Moines, Iowa, on the brief), for appellees.

Before STONE and FARIS, Circuit Judges, and RAGON, District Judge.

RAGON, District Judge.

An involuntary petition in bankruptcy was filed against Tony L. Van on February 25, 1930, and he was adjudicated a bankrupt April 11, 1930, R. G. Tipton being selected as trustee of his estate.

This appeal is by R. G. Tipton as such trustee from a decision of the trial court adverse to his efforts to set aside a conveyance of personal property to the appellees. J. H. Miller and J. H. Miller, Jr., were partners, doing business under the firm name of J. H. Miller & Son, as road contractors. J. H. Miller & Son would bid upon the work for road contracts in different states and would then sublet the work to other contractors. Tony Van and L. L. Reilly were sons-in-law of J. H. Miller. Some of the contracts which were procured were sublet to his two sons-in-law under an arrangement whereby they were to receive 90 per cent. of the amount bid, the remaining 10 per cent. to go to Miller & Son. In 1929 Miller & Son bid in certain road work in Missouri, and Reilly and Van under subcontracts were placed upon the work. Reilly's conduct of the work proved unsatisfactory to Miller and he was displaced, Van being given supervision over the work by Miller. Van had considerable machinery which was used in carrying out his contracts. The record discloses that Miller assisted in financing the purchase of this machinery, and that Van had been financially successful in his work. Van left the Missouri work uncompleted, and on September 1, 1929, was the successful bidder on a road grading job in Jones county, Iowa, one of the competitive bidders being his father-in-law, J. H. Miller.

In the spring of 1929 Van purchased some new equipment, consisting of motorized steel wagons known as "Hughes-Keenan Iron Mules." The equipment was purchased from Herman Brown, and Brown required J. H. Miller to sign the note for the purchase price with Van, which was in the amount of $8,750. The note was sold by Herman Brown to the Iowa-Des Moines National Bank of Des Moines, Iowa. The due date of the note was December 1, 1929.

From the record it would seem that Van's action in bidding on the Jones county, Iowa, job, as well as his desertion of the Missouri road jobs were without any notice or explanation whatever to Miller. Miller became dissatisfied and sought out Van, they meeting on September 16, 1929, at Mechanicsville, Iowa. Miller upbraided Van for failing to complete the work in Missouri, and finally suggested that a settlement of their affairs be made. This being assented to by Van, it was finally agreed that Van was to ship at his expense to Miller the five "iron mules," a P. & H. drag line and one caterpillar tractor in consideration of Miller canceling $15,000 of indebtedness, including the $8,750 note which Van owed to the bank at Des Moines.

A day or two after the agreement between Miller and Van, Mrs. Van, on behalf of her husband, called the Millers by phone and was answered by Mrs. Miller. She requested that Mrs. Miller ask the appellee J. H. Miller if they might keep the equipment until the work "froze up" or they had completed the job. Miller, standing by the side of his wife at the phone, directed her to state that this would be satisfactory. Pursuant to this agreement, the drag line, caterpillar tractor, and five "iron mules" were retained by Van and later were loaded and shipped to J. H. Miller & Son on December 4, 1929.

The trustee instituted these proceedings against J. H. Miller, Sr., and J. H. Miller, Jr., to recover the machinery, on the claim that the conveyances constituted a preference under section 60a and section 60b, Bankr. Act, 11 USCA § 96 (a, b), and that the transfer was void under sections 67e, 70e of the act, 11 USCA §§ 107 (e), 110 (e) and that the same was not enforceable because the contract came within the Iowa statute of frauds.

 The appellant contends that this transaction, under the statute of frauds of Iowa, is unenforceable. There is no dispute that the transaction whereby Miller received the equipment in satisfaction of the indebtedness which Van owed him was an oral agreement in its entirety. Section 9933 of the Code of Iowa which contains the statute of frauds provides that a sale of goods shall not be enforceable unless the buyer accepts part of the goods contracted to be sold or sold and actually received or gives something to bind the contract, or unless some note or memorandum in writing be signed by the party to be charged.

Sections 11287 and 11288 are applicable to section 9933. Section 11287 provides: "The above regulations, relating merely to the proof of contracts, shall not prevent the enforcement of those not denied in the pleadings, except in cases when the contract is sought to be enforced, or damages recovered for the breach thereof, against some person other than him who made it."

Section 11288 provides: "The oral evidence of the maker against whom the unwritten contract is sought to be enforced shall be competent to establish the same."

These two sections clearly do not make section 9933 an invalidating statute as contended by appellant, but as to sales of personal property it was intended to be a rule of evidence. Under the rule in Iowa both the delivery in the sale of personal property and the passing of the title thereto are determined by the intent of the parties at the time of the transaction. Madden v. Eldridge, 210 Iowa, 938, 230 N. W. 371; Van Drimmelen v. Converse, 190 Iowa, 1350, 181 N. W. 699. Whether there was a constructive delivery accordingly on September 16th, there was a physical delivery of the property on December 4th. In either event it was a completed contract between Van and Miller, the parties thereto, and not subject to be assailed as void by the trustee. Bibb v. Allen, 149 U. S. 481, 13 S. Ct. 950, 37 L. Ed. 819.

 The appellant contends that this transaction constituted a preference in favor of appellees under section 60a and section 60b of the Bankruptcy Act. To be so condemned under this section, it was necessary that the transaction occur within four months of the filing of the petition in bankruptcy, · that Van at the time of the transfer must have been insolvent and the transfer made for the purpose of giving Miller a greater percentage of his debt than other creditors, and Miller, at the time, must have had reasonable grounds for believing he was being preferred. Since it is contended by appellant that the transfer was not effected until December 4th, if, in fact, such transfer was ever effected, it is only necessary to consider the facts on this point in relation to this date, which was within the four-month period.

The important point in determining this question is the solvency of Van as of this date. The trial court found that Van was solvent on December 4, 1929, and unless this finding is clearly against the weight of the evidence it will not be disturbed. Items constituting the assets and liabilities of Van were very few. His assets consisted of a check from the state of Iowa in payment of the work on the Jones county, Iowa, job for $8,038.35, and the amount of retained percentages on this job was $2,423.33. There was due him on account of the Missouri contract $4,172.20. He owned fifty mules, valued at $110 each, which would amount to $5,500. The appraised value of his equipment other than the drag line, tractor, and "iron mules" was $3,710, and he had cash on deposit in the Muscatine State Bank in the sum of $1,193.21. All of which totaled $25,037.09. He owed the Muscatine State Bank of Muscatine, Iowa, his only creditor, $23,500. The warrant from the state of Iowa, in the sum of $8,038.35, was questioned by appellant, due to the fact that it was delivered by Van to his wife. She deposited it in their joint account in pursuance of a custom they had followed. After deducting moneys expended for living expenses, she later turned the balance of the $8,-038.35 over to Van. We cannot see the force of appellant's contention that this money was concealed, since it was handled in the customary manner, and we think in arriving at the solvency of Van as of the date of December 4th, the court properly took into consideration this item, as well as the amount of the retained percentages on the Jones county job. The amount and value of the other items were satisfactorily established, except as to the deposit in the Muscatine State Bank. However, this item may be entirely eliminated and still Van's assets would exceed his liabilities. It is to be remembered that the note for $8,750 which had been given by Van to Herman Brown, and due on

December 1st, had been assumed by Miller, who took up that note and gave his individual note in lieu thereof on the 1st of December. There is no substantial challenge of any of these items which would justify a finding other than that made by the trial court. In addition to the assets above named, Van had a going business with sufficient equipment to carry on, and an organization, all of which was of some value.

The next point in importance if Van's solvency was questionable is whether or not Miller had reasonable grounds to believe that he was being preferred by Van over other of Van's creditors. The record does not disclose that Miller was familiar with the amount of indebtedness Van was due to the Muscatine State Bank. Miller was familiar with the fact that Van had recently been in a solvent financial condition because he had purchased equipment without the assistance of Miller and in the fall of 1928 he had finished jobs which had returned him a fair profit. The Muscatine State Bank which was in a position to be more familiar with Van's financial condition than any one else evidently thought he was in a solvent condition, for on November 22d and November 27th, they advanced him in two separate loans $4,500 in addition to the $19,000 which he already owed them. Not only would the insolvency of Van have to be shown, but under section 60b, in addition, it must be shown that Miller had knowledge or reasonable grounds to believe insolvency existed. There is no evidence to justify a finding that Miller, at any time, knew or had reasons to believe or any facts to put him on suspicion that Van was insolvent. Failing in these essential points, there could be no preference under section 60a and section 60b of the Bankruptcy Act, 11 USCA § 96 (a, b).

█ The facts in this case do not bring this transaction under the condemnation of section 67e of the Act, 11 USCA § 107 (e). They do not disclose that Van made this transaction with any intention to hinder, delay, or defraud his other creditors and it certainly does not disclose that Miller accepted the transfer knowing of any such intent upon the part of Van. It was necessary for the appellant to show that this transfer as between the parties was actually fraudulent in its effect on other creditors, and this the appellant has failed to do. Coder v. Arts, 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008.

█ It is further contended by appellant that appellees were not bona fide holders for value of the road machinery prior to the date of adjudication, and for this reason the trustee could avoid the transfer of September 16th under section 70e of the Bankruptcy Act, 11 USCA § 110 (e). It is undisputed that Miller assumed the $8,750 note given to the Iowa-Des Moines National Bank, due on December 1st, and that he effected payment on that date. The appellees advanced by checks to the bankrupt from April 17, 1929, up until August, 1929, amounting to $26,000, and various items of freight, grocery, and gas bills and rent for the road machinery which the court found increased the amount to $48,149.50. Van's charges against this amount were $31,864.72, leaving the amount due Miller from Van $16,184.78, including the $8,750 note. Miller and Van came to an agreement that the amount due Miller from Van was approximately $15,000, which was an amount smaller than the testimony disclosed the debt to be. Under these facts we think the conclusion that Miller was a bona fide holder for value of the property in dispute prior to Van's adjudication as a bankrupt is justified.

█ There is a more substantial reason for sustaining the trial court's position than the foregoing. Miller proposed to wipe out all of Van's indebtedness to him provided Van would turn over to him certain designated road machinery. Van agreed to do this, and agreed that he would immediately ship, at his own expense, this particular machinery to the point designated by Miller. The parties had in mind the same items of machinery, and these items were by a subsequent and independent agreement shipped in accordance with the agreement of September 16th. Both parties had in mind a completed contract. Under the decisions of the Iowa courts referred to which govern in this case, we are of the opinion that it was the intention of both Van and Miller to pass title and effect delivery on this date. A valid transfer, therefore, was completed on September 16th, which was more than four months before the filing of the petition in bankruptcy.

The decision of the District Court is affirmed.