HERSCHEL CARMICHAEL et al., dba CARMICHAEL & SON, appellants, v. THOMAS STONE, appellee.

No. 48111.

(Reported in 54 N.W.2d 454)

JULY 28, 1952.

Life & Davis, of Oskaloosa, and H. E. DeReus, of Knoxville, for appellants.

Stuart & Stuart, of Chariton, for appellee.

MANTZ, J.—Plaintiff brought suit against defendant to recover damages on an alleged contract for the sale of three carloads of wool, alleging that the defendant failed to perform said contract by refusing to deliver to plaintiff the wool in question. The defendant denied any such contract or sale. The court tried the case without a jury. When plaintiff rested the court directed a verdict in favor of the defendant. This appeal followed.

The controlling question is: Was there such a contract between plaintiff and defendant and if so, did the defendant fail to perform it? The burden was upon the plaintiff to so show and he would be required to do so by competent evidence, and by a preponderance thereof.

Plaintiff sought to establish the alleged contract of sale by testifying to telephone conversations which he had had with defendant, by a personal interview wherein he claims defendant admitted the contract, and by showing that some three to four weeks following the alleged sale he sent defendant a check for $100 as down payment, which check defendant returned. Plaintiff also offered in evidence several notices which he gave to defendant requiring him to carry out said contract, to one of which the $100 check was attached; also a copy of a letter written to him by defendant on December 13, 1950. To all of such testi-

mony and the notices and demands the defendant made objection that same were in violation of section 554.4(1), 1950 Code of Iowa. In most instances the court reserved ruling.

In ruling on defendant's motion for a directed verdict the court sustained such objections and further held that plaintiff's evidence failed to show that there was such a contract as was alleged by plaintiff which could be enforced by such proffered testimony.

Under the familiar rule we must consider plaintiff's testimony in the most favorable light in his behalf. The question presented is: Was there such a contract as was alleged by plaintiff?

There was no written contract between the parties. True, plaintiff alleged such a contract and he offered to show this by certain telephone conversations, a claimed admission, and certain written demands upon defendant to deliver the three carloads of wool, the $100 check tendered, a letter dated December 13, 1950, from defendant denying any sale and a wire sent him by defendant on January 6, 1951.

As throwing some light on the question as to whether or not there was such a contract we call attention to the testimony of plaintiff of a conversation he claims to have had with defendant in the office of the latter in Chariton on December 2, 1950. All was objected to under section 554.4, Code of 1950. Plaintiff told of going to defendant's place of business in Chariton. When asked to detail the conversation he said that he "spoke to Tom" (defendant):

"Tom, I came down to see when you were going to be ready to deliver those three carloads of lamb wool that I bought that you have here in Chariton. 'Why', he said, 'that wool is down by Kansas City.' I said, 'Tom, I didn't buy any wool from you that'—. He said, 'That wool is down by Kansas City and the people say they will take 76c a pound for it, and I would be willing to show it to you.' "

Plaintiff again said that the wool he bought was to be in Chariton. He further says that as he started to leave he said to defendant: "Tom, that was three carloads of lamb wool I bought from you for 76c? and he said, 'Yes'.".

According to his testimony he went back to Oskaloosa and made out and mailed defendant the $100 check, which the latter refused to accept. The above conversation, assuming that it was competent, shows that there was no delivery of the wool. In it the plaintiff made direct inquiry as to when defendant was going to deliver the wool which he claims he bought of defendant in Chariton. The defendant's reply was that the wool was in Kansas City and could be bought at seventy-six cents per pound, and offered to show it to plaintiff.

Following this interview in Chariton the plaintiff wrote the following letter:

"Dear Tom:

"Pursuant to our conversation of November 10th and December 2nd, 1950 wherein on November 10th I purchased 3 carloads of bright lamb wool from you at 76c per pound and which sale was confirmed by you on Dec. 2nd, I am enclosing my check to you in the amount of $100 as down payment of said transaction. I will notify you shortly as to the time and place I will take delivery of wool.

"Very truly yours,
"Carmichael & Son.
"By Herschel Carmichael."

The $100 check enclosed had thereon—"As down payment on 3 carloads of bright lamb wool at 76c per pound."

Defendant received this letter about December 9. On December 13, 1950, defendant wrote the following:

"Dear Herschel:

"You never purchased three carloads of lamb wool from me. You said you would have to see the wool before you bought. The wool that I was trying to sell, I can still sell this wool for 76c per pound. If you want this wool, send $15,000.00 as a down payment and I will buy the wool for your account.

"Yours very truly,
"Tom Stone."

The entire record, including the parts of the evidence objected to, fails to show a meeting of the minds sufficient to constitute a contract. It is quite evident that there were negotiations

concerning a sale of wool. These started with the phone conversation of November 10, 1950—that concerned two carloads of lamb's wool. The plaintiff wanted time to consider the deal and called the day following saying he would take three carloads. There was no writing, no delivery, and no down payment. In the phone talks there was no mention of "bright" lamb's wool.

On January 6 defendant wired plaintiff Herschel Carmichael at Oskaloosa, Iowa, as follows: "I am going to Kansas City, Mo. in the morning of January 8 to look at the lamb wool that I offered to sell to you at 76c per lb. If you want to try this lamb wool come down.

"Tom Stone."

On January 10, 1951, a notice of demand signed by plaintiff was served upon defendant by the sheriff of Lucas County, Iowa. Said notice, in effect, reiterated claim of plaintiff that he had purchased three carloads of wool from the defendant; claimed the wool sold was at Chariton, Iowa, and nowhere else; that he had sent a $100 check to bind the deal and that same had been received and held by defendant; also, that if the wool was not delivered before January 15, 1951, suit would be brought.

According to plaintiff a carload of wool is 25,000 pounds, and his claim is that defendant sold him three carloads, or 75,000 pounds, at the price of seventy-six cents per pound, and the selling price would be $57,000. The record shows nothing as to terms of sale, how much to bind the bargain, and the payment. It would hardly seem reasonable that a $57,000 deal for the sale of personal property could be bound by a down payment of $100 —the price of about 125 pounds of wool of a 75,000-pound cargo.

In order for plaintiff to recover he must sustain his claim that he had a contract with the defendant whereby the latter sold plaintiff three carloads of wool at seventy-six cents per pound. He does not claim that there was any delivery—he was urging it. He sent a $100 check—an earnest payment *after the controversy* arose. This was no sale. The trial court held that the oral evidence as given by him violated the provisions of section 554.4, 1950 Code. The court, in sustaining defendant's motion for directed verdict, said:

"The motion will have to be sustained, gentlemen, for the reasons I have heretofore stated. That the court holds that the

sending of the check, Exhibit P-2, and the letter, P-1, to the defendant, which check was returned by defendant in Exhibit P-3, did not constitute a payment by plaintiff to defendant of a part of the purchase price sufficient to make any contract between plaintiff and defendant, which has been testified to in this case, enforceable under the provisions of section 554.4 of the Code of 1950. The court has heretofore sustained objections to the oral testimony for that reason. The objections being sustained, the record does not now contain any contract shown by the plaintiff which has been violated by the defendant upon which any judgment in favor of plaintiff could be predicated. Therefore, the motion is sustained and judgment against plaintiff for costs."

We have examined the record and hold that the ruling of the court was correct. Irrespective of section 554.4 of the Code we hold that there was no evidence showing a contract between the parties. There were some negotiations, but never was there a meeting of the minds of plaintiff and defendant. Here there were 75,000 pounds of wool valued at $57,000—no terms fixed as to down payment or delivery, and to sustain a claim that a $100 check down payment would bind the deal with defendant denying the sale and refusing the check would seem to border upon the absurd.

We have examined the authorities cited by plaintiff. We have no question as to the general rules announced as to how contracts may be entered into. The facts, as set forth in the cases cited, are dissimilar to the one in question. He cites the case of Morris Furniture Co. v. Braverman, 210 Iowa 946, 230 N.W. 356. In that case an order was given for furniture to be manufactured. The order was given September 17, 1923, and was sent in and the furniture was made up and was being loaded when the defendant, on September 25, 1923, wrote asking that the order be held until further notice. The defense was the Statute of Frauds, and cited section 9933, Code of 1924 (now 554.4, Code of 1950). This court held that the statute did not apply on account of the nature of the transaction.

Plaintiff cites the case of Seevers v. Cleveland Coal Co., 158 Iowa 574, 594, 138 N.W. 793, 801, Ann. Cas. 1915D 188, in support of his claim that the declaration of defendant in his office at Chariton relating to the wool was an admission and a

declaration against interest, and therefore made other exhibits admissible, to wit—the letter written by plaintiff detailing the transaction, the check, the notice and demand and the telegram. We fail to see wherein the fact situation in that case is comparable to those of the instant case. There were negotiations as to the wool but nothing definite. At Chariton there was a dispute as to where the wool was located. Plaintiff claimed he bought the wool at Chariton. Defendant said the wool was in Kansas City and offered to show it to plaintiff.

We see no point in further discussion. The court held that there was no contract. Whether it was bilateral or unilateral is beside the point. The plaintiff claims that he was one of the parties to the contract and defendant was the other. We hold that the court did not err in directing a verdict.

In addition to holding that there was no contract of sale and purchase of the wool between plaintiff and defendant, the court held that such contract, even if shown, was not enforceable under the provisions of section 554.4 of the 1950 Code. The provision of such statute is a rule of evidence. Berryhill v. Jones, 35 Iowa 335; Tipton v. Miller, 1935, 8 Cir., Iowa, 79 F.2d 298; Thomas v. Peoples Gas & Electric Co., 220 Iowa 850, 263 N.W. 499; 35 I. C. A. 93–95.

A contract to sell or a sale of goods, etc., shall not be enforceable unless the buyer accept part of the goods to be sold and actually receive the same or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf.

In the case of Lockie v. McKee, 221 Iowa 95, 97, 264 N.W. 918, this court said that an oral contract with no writing, where nothing was paid either in earnest money or part payment and there was no delivery of the goods, was unenforceable under the statute, section 9933 (now 554.4).

In the instant case the court held that there was no contract. We hold that the court was right. Even assuming that there was a contract, as charged by plaintiff, it was unenforceable in the manner urged and attempted by plaintiff.

The case is affirmed.—Affirmed.

GARFIELD, WENNERSTRUM, SMITH, and HAYS, JJ., concur.

Special concurring opinion by OLIVER, J., in which MUL-
RONEY, C. J., and BLISS, GARFIELD, SMITH, and THOMPSON, JJ.,
join.

OLIVER, J. (specially concurring)—This was an action for
damages, tried to the court, for breach of an alleged contract of
sale. Plaintiffs pleaded defendant orally agreed to sell them three
carloads of lamb's wool at seventy-six cents per pound and there-
after refused to deliver the same or any part thereof, to plain-
tiffs' damage. Defendant's answer denied any contract to sell
wool to plaintiffs.

Plaintiffs sought to prove the alleged oral contract by inter-
rogating plaintiff Herschel Carmichael relative to certain oral
negotiations or conversations between him and defendant. To
such questions defendant objected on the ground the testimony
called for was incompetent under section 554.4, Code of Iowa
1950. This section is the Statute of Frauds in the Sales Law.
It provides in part:

"A contract to sell or a sale of any goods * * * shall not
be enforceable by action unless the buyer shall * * * give some-
thing in earnest to bind the contract, or in part payment, or
unless some note or memorandum in writing of the contract or
sale be signed by the party to be charged."

The court sustained the objections and like objections to
questions propounded another witness concerning defendant's
asserted later oral admissions of the contract. Plaintiffs predi-
cate error upon these rulings and orders.

Code section 622.34 refers to the general Statute of Frauds,
section 622.32, as "regulations, relating merely to the proof of
contracts * * *." Code section 554.5 makes this applicable to
section 554.4. Hence, section 554.4 is a rule of evidence rather
than an invalidating statute. Thomas v. Peoples Gas & Electric
Co., 220 Iowa 850, 263 N.W. 499. Therefore, the orders of the
court excluding the testimony were correct.

Plaintiffs rely also upon a registered letter mailed by them
to defendant referring to the alleged oral contract and stating,
"I am enclosing my check to you in the amount of $100 as down
payment of said transaction." A notation on the face of the
enclosed check recited: "As down payment on three carloads of

912

bright lamb wool at 76c per pound." The exact date defendant received this letter was not established because plaintiffs refused to produce the postal return receipt which showed such date. Defendant promptly returned the check with a letter in which he denied the alleged sale of the wool. Neither of these letters was sufficient to satisfy the Statute of Frauds because the first was signed by plaintiffs, not defendant, and defendant's letter denied the alleged contract. Nor did the sending of the check constitute giving "something in earnest to bind the contract, or in part payment" within the meaning of the statute. It was merely a tender which was refused.

The text in 49 Am. Jur., Statute of Frauds, section 265, states: "The mere tender of payment or part payment of the price of goods bargained for by the buyer, if unaccepted by the seller, is not sufficient to satisfy the statute." See also 37 C. J. S., Frauds, Statute of, section 165; Hershey Lumber Co. v. St. Paul Sash, Door & Lumber Co., 66 Minn. 449, 69 N.W. 215; Jones v. Taylor, 1 (G. Greene) Iowa 434.

There was no competent evidence in the record to sustain the allegations of plaintiffs' petition. At the conclusion of plaintiffs' case defendant moved for judgment on that ground. This motion was properly sustained. I agree the judgment should be affirmed.

MULRONEY, C. J., and BLISS, GARFIELD, SMITH, and THOMPSON, JJ., join in this special concurrence.