**FREMON v. W. A. SHEAFFER PEN CO.**

**Civ. A. No. 1-31.**

United States District Court
S. D. Iowa, E. D.
Jan. 12, 1953.·

Rodney Bedell, St. Louis, Mo., Kingsland, Rogers & Ezell, St. Louis, Mo., Boyd, Walker, Huiskamp & Concannon, Keokuk, Iowa, for plaintiff.

Pollard, Palmer & Lawse, Fort Madison, Iowa, Thiess, Olson & Mecklenburger, Chicago, Ill., for defendant.

RILEY, District Judge.

This matter comes before the court on defendant's motions for summary judgment and to dismiss. There are also awaiting rulings, the question of plaintiff's right to trial by jury, the questions raised by defendant's objections to plaintiff's interrogatories, and other matters which are disposed of by the court's ruling on these motions.

I.

The action itself, filed on February 17, 1951, is based on a claimed oral contract said to have been made more than twenty-three years before, between plaintiff and defendant on November 8, 1927. Communications and relations between plaintiff and defendant entirely ceased from 1934 until February 1946, when plaintiff asked that the unfinished matters between the parties be closed. Defendant denied the existence of any unfinished matters, whereupon, after five years more lacking a few days, plaintiff commenced this action.

Plaintiff is a lawyer and at all times here involved was a resident of Missouri. Defendant, a Delaware corporation, is located and has its factory at Fort Madison, Iowa. In the years 1924, 1925 and early 1926, plaintiff, representing himself and one Avery S. DeHaven, approached defendant, with whom there were some preliminary dealings as to fountain pens, in the manufacture of which defendant was engaged. DeHaven was a machinist living at Leeper, Missouri, where he was employed by the Missouri Southern Railroad Company, of which plaintiff was an official. DeHaven died at Poplar Bluff, Missouri, in 1941.

The dealings between plaintiff and defendant related to certain inventions made jointly by plaintiff and DeHaven in the field of fountain pen racks and desk stands. As a result of these dealings there was a formal written contract between plaintiff and DeHaven on one side and the defendant on the other, dated March 25, 1926 (Defendant's Exhibit 1). The contract effected an assignment from these first parties to the defendant of all inventions up to that time relating to fountain pen racks and desk stands, which included inventions disclosed in three United States patents identified here as Deft's Ex. 2, 3 and 4. Full consideration of $2,000 was paid by defendant to plaintiff and DeHaven for all inventions made by them or either of them relative to fountain pen racks and fountain pen desk stands prior to March 25, 1926, including the three inventions mentioned (Fremon Dep. p. 36; Plaintiff's admission No. 5). The written agreement also made provision for the offer to defendant of all related inventions later made by plaintiff and DeHaven.

On January 19, 1927, plaintiff wrote to the defendant (Deft's Ex. 13) forwarding a model of a new device, which is referred to in the depositions and identified as Deft's Ex. 11. This model was submitted consistently with the requirements of the contract of March, 1926 (Pltf's admission No. 6) and was offered for a substantial consideration. After an exchange of correspondence plaintiff and the defendant's representative conferred in Chicago on February 24, 1927, where the idea embodied in the model was discussed (Pltf's admission No. 7). This action, however, is not based upon any agreement which may have been made, or any understanding which may have been reached, between C. R. Sheaffer, representing the defendant, and Fremon at the conference in Chicago on February 24, 1927 (Pltf's admission No. 8).

The alleged oral agreement upon which this action is based is claimed to have been made at a conference in Fort Madison, Iowa, on November 8, 1927, attended only by C. R. Sheaffer and plaintiff. Plaintiff has no contemporaneous written memoran-

dum of it (Pltf's admission No. 10). Plaintiff declares upon it in paragraph 3 of the complaint, wherein it is alleged that on the "consideration that plaintiff would not offer said additional invention to any competitor of defendant, nor file patent application on the same, unless authorized by defendant to do so, defendant agreed and promised to adjust compensation to plaintiff under the contract of March 22 (25), 1926, and to pay to plaintiff amounts representative of the value to defendant of the inventions and patent applications covered by said contract of March 22, 1926, in addition to the amounts previously paid with respect to said contract."

In his deposition concerning this oral agreement of November 8, 1927 (Dep. pp. 48–62) plaintiff claims that defendant agreed that anything plaintiff might do, or refrain from doing, with reference to defendant's Exhibit 11, that benefited defendant, would be adequately compensated. He claims that it was agreed, to use his words, that when the Wahl interference is finished plaintiff and defendant were to have a conference at which they were to consider everything that has occurred after now and up to that time, and upon considering that, were to agree what was the fair value of the rights which were conveyed to the Sheaffer Company by the Fremon and DeHaven assignment of 1926, and when *"we have reached that agreement,* then the Sheaffer Company is to pay me an amount that represents fair compensation for the value of those rights, less the sum of $2,-000.00" (F.Dep. 58). (Emphasis supplied.) The Wahl interference involved a dispute as to patent rights between the defendant and Wahl, another manufacturer of fountain pens. In 1934, "the Wahl interference had been settled for years" (F.Dep. 78–79).

That there was no agreement made after March 25, 1926, between defendant and Fremon in which defendant agreed or promised to pay Fremon a definitely fixed amount in addition to amounts previously paid upon the termination of the so-called Wahl interference, is admitted by plaintiff, but plaintiff claims "that there was an agreement made after March 25, 1926, to pay a

determinable amount as set forth in the complaint" (Pltf's admission No. 22). The agreement set forth in the complaint is limited entirely to that of November 8, 1927. After March 25, 1926, Fremon and defendant never reached an agreement with respect to a basis for calculating any amount to be paid to Fremon. There was no conference held between plaintiff and defendant between about November 8, 1927, and 1933 or 1934 (Pltf's admission No. 24). There was a conference at Fort Madison between plaintiff and defendant in 1933 or 1934 (Pltf's admission No. 25). There was no correspondence or communication between plaintiff and defendant between about 1934 and about 1946 (Pltf's admission No. 26).

It is the claim of the plaintiff that De-Haven had no interest in the benefits to be derived through Exhibit 11. However, in the letter of March 7, 1933, to the defendant (Deft's Ex. 38) plaintiff said:

"Missouri Southern Railroad Company
"Leeper, Missouri

"Jules A. Fremon
"Vice President       March 7, 1933
"Mr. C. R. Sheaffer, Treasurer,
"W. A. Sheaffer Pen Company,
"Fort Madison, Iowa.
"Dear Mr. Sheaffer :—

"Referring to previous correspondence, the elimination of 'bootleg' desk sets from current issues of mail-order catalogs, and various other circumstances which I have noticed recently, leads me to believe the measures taken to protect and maintain the Pen Desk Set Company's position have been made effective. If this is true I presume you will be ready shortly *to close up the unfinished matters with Mr. DeHaven and myself.* (Emphasis supplied.)

"I shall be pleased to have a conference with you at your convenience and it would be somewhat handier for me if this could be in Chicago the next time you are in that city. I can run up to Chicago at any time."

"Very truly yours,
"/s/ Jules A. Fremon"

It is the claim of plaintiff's counsel in the first brief filed in relation to defendant's motion for summary judgment that "The obligations under that assignment-agreement (contract of March 25, 1926) form no part of the subject matter of the present action." It is recognized by plaintiff's counsel that the oral agreement of November 8, 1927, between plaintiff and defendant called for another conference to determine the compensation for the 1927 agreement, and that that was to be held when the "Wahl interference is finished." On October 2, 1929, defendant informed plaintiff that the Wahl interference was concluded (Deft's Ex. 32). This letter to plaintiff was prompted by one from him dated September 30, 1929, in which he informed defendant that Mr. DeHaven had furnished to him (plaintiff) defendant's letter of August 2, 1929, to Mr. DeHaven, who had written asking when the Wahl interference was expected to be settled, "so that the deal can be finally settled with Mr. Fremon and myself." This indicates the recognition by plaintiff and defendant of an apparent interest of DeHaven in the unfinished matters which were to be adjusted upon the conclusion of the Wahl interference.

The first question therefore which confronts us is whether or not plaintiff has stated a claim upon which he is entitled to relief. The question must be answered in the negative, because of the fact that the record does not show the existence of a complete contract between plaintiff and defendant which could be the basis of the suit. This court, after reviewing that portion of the entire record about which there is no dispute of fact, must conclude not only from plaintiff's statements of the contract and admissions relating to it, but also from the acts of the parties, that their minds never met upon the subject matter or the price and terms of their agreement. They never progressed any further than to agree upon some general terms.

The claimed oral agreement is uncertain, indefinite and vague as to material matters which go to the very heart and purpose of such an agreement. Patently, it was at best but preliminary to a subsequent agreement to be effected in which these material matters would be determined and agreed upon by both parties. It is apparent from the oral contract as stated by the plaintiff that all that he and the defendant agreed upon was to agree to meet when the Wahl interference was concluded to agree on terms by which the compensation paid under the contract of March 27, 1926, might be adjusted. In this, which plaintiff declares in the complaint as solely a contract for *his* benefit, the record contradicts plaintiff because it discloses that as late as 1933 DeHaven was corresponding with the defendant and the defendant with both DeHaven and Fremon as to the time of a conference for the purpose of reaching an agreement as to what amount should be paid. Certainly, this court may not decide nor can a jury determine what at such a conference the parties would have agreed that amount should be. That could be determined only by free and voluntary agreement between the parties themselves. Such a conference was never held. Such an agreement between plaintiff and defendant was never reached.

The Supreme Court of Iowa has declared in Lynn v. Richardson, 151 Iowa 284, 288, 130 N.W. 1097, 1098:

"The trial court instructed squarely that the letters we have quoted, taken in connection with some earlier ones, constituted a contract of sale covering defendant's dental business, including instruments, furniture, office, and location, supplies, and the good will of his business. In this there was manifest error. Not only the correspondence, but the acts of the parties, show that their minds never met upon either the subject-matter or the price and terms of agreement. They never progressed any further than to agree upon some general terms, and their letters and other conduct indicate that all they did by correspondence was to agree to meet to settle upon terms or to close the matter by further correspondence.

"Generally speaking if the parties intend their correspondence or oral negotiations as but steps leading up to a binding contract, no contract is made until the final consummation of

the negotiations through the execution of the formal written agreement."

In Federal Land & Securities Co. v. Hatch, 147 Iowa 18, at page 25, 125 N.W. 837, at page 839, it is said:

"The fact, too, that the first writing in this case is uncertain and indefinite, as to some material terms, is a strong indication that it was considered as a mere preliminary to a contract in which these matters should be adjusted and agreed upon."

The case of Lynn v. Richardson, supra, is cited in Krutsinger v. School Twp. of Liberty, 219 Iowa 291, 257 N.W. 797, 798, in support of the statements that "Mutual assent of the parties is essential to the consummation of a contract. * * * That is to say, the minds of the parties must meet upon all of the essential elements thereof."

It is said in National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F.2d 97, 102:

" * * * If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement, even though the negotiations evidenced a complete willingness, or even an announced determination, *to agree in the future* upon such issues as might subsequently arise, it must still follow that a valid and binding contract was not made as of the earlier date." (Emphasis supplied.)

In Richmond Screw Anchor Co., Inc., v. Umbach, 7 Cir., 173 F.2d 532, at page 534, it is said:

"The most that can be said relative to an agreement is that the parties understood that at some time in the future a change would be made, which was left for future negotiation and agreement. However, there was thereafter no negotiation or agreement for increased percentages. Where an essential element of a contract is reserved for future agreement, no legal obligation as to such element arises until such future agreement is made. Boatright v. Steinite Radio Corp., 10 Cir., 46 F.2d 385, 389; Weegham v.

Killefer, D.C., 215 F. 168, 170; Wynne v. McCarthy, 10 Cir., 97 F.2d 964, 970; Sterenberg v. Beach, 219 Ill.App. 68, 73."

II.

There are other grounds which require that defendant's motions for summary judgment and to dismiss should be sustained.

For the purpose only of stating and discussing them it will be assumed that on November 8, 1927, at Fort Madison, Iowa, plaintiff and defendant made an oral contract as alleged, of which there was no contemporaneous written memorandum.

The jurisdiction of the court to entertain this suit is based on diversity of citizenship of the parties. The applicable and controlling law as to this and all divisions of this memorandum is that of Iowa. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

There is no Federal statute of limitations applicable in a suit of this character. In such case the court will give effect to the Iowa statutes of limitations. Amy v. City of Dubuque, 98 U.S. 470, 25 L.Ed. 228.

The Iowa statute of limitations, Section 614.1, Code of Iowa 1950, I.C.A., requires actions of this character to be commenced within five years. The alleged oral contract called for settlement or readjustment "When the Wahl interference is finished" (Pltf's Dep., p. 58). In defendant's letter of October 2, 1929 (Deft's Ex. 32) to him, plaintiff was informed that "Wahl beat us in the interference you mentioned." Plaintiff knew in 1934 "the Wahl interference had been settled for years" (Pltf's Dep. 78–79).

It is the general rule in Iowa that plaintiff's cause of action accrues to start the running of the statute of limitations when all the facts exist so that plaintiff can allege a complete cause of action. Dean v. Iowa-Des Moines Bank, 227 Iowa 1239, 1242, 281 N.W. 714, 290 N.W. 664, 128 A. L.R. 137.

It is without dispute that plaintiff knew as early as 1929 that the "Wahl interference" had been concluded. Assum-

ing the existence of the contract upon which plaintiff declares, he had a right to act. If he expected to declare upon it, he had the obligation to do so within five years. Instead, he waited more than twenty years.

It is the law of Iowa that "A creditor may not by his own act or neglect delay or postpone the running of the statute", Lovrien v. Oestrich, 214 Iowa 298, 299, 242 N. W. 57. If this were not so, then one under no restraint or disability to act could suspend indefinitely the running of the statute. The rule was well stated thus in the early Iowa case of Prescott v. Gonser, 34 Iowa 175, 179:

> "It is certainly not the policy of the law to permit a party, against whom the statute runs, to defeat its operation, by neglecting to do an act which devolves upon him, in order to perfect his remedy against another. If this were so, a party would have it in his own power to defeat the purpose of the statute in all cases of this character. He could neglect to claim that to which he is entitled, for even fifty years unaffected by the statute of limitations, thereby rendering it a dead letter. In such a construction of the statute we cannot concur."

Plaintiff contends that the cause of action against defendant did not accrue to plaintiff until the demand and refusal in 1946. For the purpose of this discussion only, we take the plaintiff's statement of the contract as correct. Construing it most favorably to plaintiff and in his own language, plaintiff's claim ripened when the "Wahl interference is finished." Plaintiff learned of that in 1929; certainly he knew it was finished several years before 1934. The statute of limitations had run many years before this action was filed.

It is unnecessary now to decide whether DeHaven was a partner or jointly interested, nor is it decided by the ruling on these motions. (If it were necessary, this court would rule from the facts without dispute in this record, that DeHaven was jointly interested (see Deft's Ex. 31, inter alia). Attention should be called in pass-

ing, however, to the letters, Exhibits 29, 30, 31 and 32, which disclose the joint interest of plaintiff and DeHaven in the contract upon which plaintiff seeks here to declare (Deft's Ex. 40 from DeHaven to defendant May 26, 1934, and Ex. 24A in response thereto). If, upon a trial of the case it is found that DeHaven was jointly interested, the bar of the Iowa statute would have been complete during his lifetime. DeHaven died in 1941.

The court finds that plaintiff's action is barred by the statutes of limitations cited. On this ground alone the motion for summary judgment is good. It is said in Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 150 F.2d 997, 1000:

> "The running of the statute of limitations was one of the grounds urged by the insurer in its motion to dismiss the insured's petition. It was a ground on which summary judgment could properly be entered, Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Reynolds v. Needle, 77 U.S.App.D.C. 53, 132 F.2d 161; Roe v. Sears, Roebuck & Co., 7 Cir., 132 F.2d 829, 832; and for that purpose the insurer's motion to dismiss was entitled to be treated as one for summary judgment, Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85; Boro Hall Corporation v. General Motors Corporation, 2 Cir., 124 F.2d 822."

### III.

Related to the statute of limitations is the doctrine of laches, the rule as to stale claims, and that of equitable estoppel. The last, Pomeroy describes in these words, 2 Pom.Eq.Jur., Sec. 802:

> "Equitable estoppel, in the modern sense, arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience." Quoted from Mahoning Inv. Co. v. U. S., 3 F.Supp. 622, 629, 78 Ct.Cl. 231.

Speaking of it in Dickerson v. Colgrove, 100 U.S. 578, at page 580, 25 L.Ed. 618, the court said:

"The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais*. The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit."

Speaking further, the same court said, 100 U.S. at page 581:

"There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on. The rule does not rest on the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

If it is claimed that defendant did not change its position, that is sufficiently answered by saying that defendant's position was and is changed by the death of DeHaven ten years before this suit was commenced.

The letters proper for consideration in a ruling on this motion disclose that DeHaven was asserting an interest (Deft's Ex. 29 and 40). Plaintiff recognized the existence of some kind of interest in defendant's Exhibit 31, September 30, 1929, when Fremon said in his letter to defendant:

"Missouri Southern Railroad Company
        "Leeper, Missouri

"Jules A. Fremon
    "Vice President    September 30, 1929
"Mr. C. R. Sheaffer, Treasurer,
"W. A. Sheaffer Pen Company,
"Fort Madison, Iowa.
"Dear Mr. Sheaffer:—

"Several weeks since, Mr. DeHaven handed to me your letter addressed to him dated August 2, 1929.

"I have expected for some time to visit your city for a personal conference with you, but have been unable to make the trip.

"I am considerably disturbed because of your statement to Mr. DeHaven that all matters between your company and myself are closed. This is not at all in accordance with my understanding of the agreement reached in our last conference in Chicago. It was then and is now my understanding that whenever the Wahl interference is closed or settled, and by reason of my forbearance to file applications for patents on additional novel constructions, at your request, you would (when the Wahl matter is settled) re-examine the whole deal with Mr. DeHaven and myself from the beginning and compensate us upon the basis of actual rights transferred to you.

"I have been expecting to have some word from you concerning the state of this interference matter, while, judging from the statement in your letter to Mr. DeHaven you do not contemplate treating with me further. I will be greatly obliged if, being now informed of my understanding of pending matters, you will advise whether we are in agreement respecting the same.

                "Very truly yours,
                "/s/  Jules A. Fremon"

Plaintiff denies any interest of DeHaven in the oral contract here declared upon. By his delay in bringing this action, plaintiff has deprived defendant of the privilege of inquiry of DeHaven himself as to the interest about which twice he addressed defend-

ant, and about which plaintiff addressed defendant. The lips of DeHaven are sealed by death. If plaintiff had an enforceable demand against defendant he was bound seasonably to have asserted it. During DeHaven's lifetime, when defendant could have taken his deposition and when defendant had the right to believe by its counsel's flat denial of liability to DeHaven (Deft's Ex. 24–A) that both DeHaven and plaintiff were "paid in full," plaintiff stood by, making no demands for the remaining seven years of DeHaven's lifetime. It matters not that plaintiff claims ignorance of the correspondence (Deft's Ex. 25) between defendant's counsel and DeHaven. The fact remains that in this belated assertion of his claim against defendant, the latter now is unable to make any inquiry of DeHaven, a central figure from the outset of the relations between plaintiff and defendant. That barrier is erected by the delay of plaintiff in asserting his claim.

All that plaintiff seeks to assert now, he knew in 1929. Certainly he knew it in 1934 when he last dealt with defendant (Pltf's admission No. 26). Statutes of limitations are statutes of repose. That is their end and purpose. The doctrines developed by human experience described tersely as laches, stale claims, equitable estoppel, have the same object and purpose. Of equitable estoppel, the United States Supreme Court in Dickerson v. Colgrove, supra, said, 100 U.S. at page 581:

"It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked."

There is nothing in the record which can be regarded as providing adequate excuse for plaintiff's delay of more than twenty years to commence this action. It is to situations such as this that these long accepted rules as to stale claims, estoppel and laches owe their origin. Their foundations, as said above, are "justice and good conscience." They bar plaintiff's claim here. The person whose testimony might well have been decisive of the claim, even if seasonably brought, is dead. Without now deciding that defendant is directly prejudiced by that fact, this court can decide as a verity that the defendant is deprived of whatever benefit might have been derived from his testimony. It is so deprived by plaintiff's delay. The delay until after the death of DeHaven is of plaintiff's own doing. He must accept the consequences of that delay.

### IV.

■■ If it is assumed for the purposes of this division that plaintiff had an oral agreement with defendant as claimed by plaintiff, it appears that plaintiff has sought to avoid the bar of the statute of limitations and has interpreted it to mean that defendant would be required to make the adjustment as to the compensation paid under the original contract, Exhibit 1, upon the expiration of the patents. His letter of demand to defendant dated February 7, 1946, (Deft's Ex. 21) said:

"The two patents, Nos. 1,641,846 and 1,675,543, granted to your company as assignor of the rights of myself and Avery S. DeHaven, both have now expired."

"Since all financial gains or other results flowing from the granting and existence of these patents must have ceased with their expiration, and since a period of more than six months has elapsed since the expiration date of the patent last issued, it would seem that your company is now possessed of all the information needed to close up the unfinished matter pending between us."

On plaintiff's contention that he became entitled to the accounting after the expiration of the patents, and accepting plaintiff's interpretation of the agreement, then it was one "not to be performed within one year from the making thereof" and therefore fell within the ban of the Iowa statute which forbids evidence of certain contracts, including those of the character quoted. Section 622.32, Code of Iowa 1950, I.C.A., provides among other things:

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent: * * *

"4. Those that are not to be performed within one year from the making thereof."

Defendant contends that the alleged oral agreement of November 8, 1927, in effect purports to modify and adjust the written agreement of March 25, 1926 (Deft's Ex. 1) selling interests or rights in choses in action, that is, certain improvements or inventions related to fountain pen racks and desk stands such as those disclosed in DX-2, DX-3, DX-4, and that such an alleged oral modification of the written contract is and was within the purview of the Iowa statute of frauds relating to choses in action and other personal property and is not enforceable, citing Section 554.4 of the Code of Iowa 1950, I.C.A., to this effect:

"Statute of frauds. 1. A contract to sell or a sale of any goods or choses in action shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold and actually receive the same or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

By the provisions of Chapter 554, section 554.5, of the Iowa Code, I.C.A., Section 622.34 is made to apply to sales of goods and choses in action. Defendant therefore contends that if the plaintiff should take the position that the alleged agreement was not to be performed until the certain patents had expired, then the alleged oral 1927 agreement is not now enforceable under Section 622.32, because no evidence may be offered unless it be in writing and signed by the party charged or his authorized agent. The Iowa Supreme Court has held as recently as a few months ago, in Carmichael v. Stone, 54 N.W.2d 454, 457, in considering Section 554.4 of the 1950 Code, I.C.A., that "The provision of such statute is a rule of evidence", and in a special concurring opinion joined in by a majority of the court, this is said, 54 N.W.2d at page 458:

"Code section 622.34 refers to the general Statute of Frauds, section 622.32, as 'regulations, relating merely to the proof of contracts * * *.' Code section 554.5, [I.C.A.] makes this applicable to section 554.4. Hence, section 554.4 is a rule of evidence rather than an invalidating statute."

In this Circuit it long has been the rule that the law of the forum will be applied as to the defense of the statute of frauds. It was said in Midland Steel Sales Co. v. Waterloo Gasoline Engine Co., 8 Cir., 9 F.2d 250, 252, in discussing the Iowa statute of frauds, "The construction given to this statute by the highest court of that state is controlling here."

Plaintiff argues that since the statute of frauds is a rule of evidence, the question may not be raised on a motion to dismiss but only at trial. This court interprets Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269, to take a contrary view, and to allow the question to be raised on a motion for summary judgment. The court said, 181 F.2d at page 271:

"The question of the sufficiency of the evidence raises an issue of law and if, under the facts, the court would be required to direct a verdict for the moving party, then a summary judgment should be granted." (Citing cases.)

The court agrees with the contention of defendant's counsel that the plaintiff is on the horns of a dilemma in attempting to avoid both the statute of frauds and the statute of limitations. Counsel argues that if the understanding of the parties was that plaintiff's right of action did not accrue until the expiration of the patents, he runs afoul of the statute of frauds, but if the plaintiff contends that the right of action accrued when the defendant failed to have the alleged requested conference after the termination of the Wahl interference, then he is barred by the statute of limitations.

The court finds that the alleged oral agreement falls within the ban of the statutes cited above, and that in the absence of some note or memorandum in writing of the contract, signed by the defendant, no evidence thereof would be admissible.

## V.

It is contended in defendant's motion to dismiss that plaintiff was required by Rule 19(a) of the Rules of Civil Procedure, 28 U.S.C.A., to join the estate of Avery S. DeHaven, or any successor in interest, for the reason that plaintiff's alleged right of action is joint with Avery S. DeHaven. Defendant calls attention to, and relies upon: (a) the March 25, 1926, written contract (Deft's Ex. 1), in which plaintiff and DeHaven bound themselves "jointly and severally" as to all inventions made directed to fountain pen racks and fountain pen desk stands, with any compensation to be paid, not to either plaintiff or to DeHaven, but to both; (b) Fremon's admission (Dep. p. 42) that his alleged invention was submitted by him "pursuant to the provisions of the agreement dated March 22, 1926"; (c) his further admission (Dep. p. 90) that "throughout the time" he "might have said to DeHaven that *we* would have to sue"; (d) his further admission (Dep. p. 69) that "the thought was that he (DeHaven) would get something out of it all right"; and (e) letters written by plaintiff to defendant in 1927 (Deft's Ex. 18), in 1929 (Deft's Ex. 31), and in 1933 (Deft's Ex. 38), in which he admitted that DeHaven was a joint party in interest to the November, 1927, alleged oral agreement.

It is argued that plaintiff represented DeHaven as an attorney, agent or partner in the negotiations leading up to the written contract of March 25, 1926 (Deft's Ex. 1), and that this is disclosed by a preliminary "affidavit" dated May 7, 1924, signed by plaintiff in his own behalf and on behalf of DeHaven, as follows: "Jules A. Fremon Atty. for Avery S. DeHaven." Plaintiff's deposition, page 17, identifies the paper as genuine, and as to DeHaven's signature, says, "That is myself signing as representing Mr. DeHaven." In the response to request for admissions, No. 11, plaintiff says that all letters from plaintiff to defendant between 1929 and 1950 had reference to the subject matter of the agreement of November 8, 1927. These letters include Deft's Ex. 31 of September 30, 1929, and Deft's Ex. 38 of March 7, 1933,

in which plaintiff emphasized that the "deal" and the "unfinished matters" involved himself and DeHaven. As late as February 15, 1946 (Deft's Ex. 23) when plaintiff was presenting his claim to defendant, he responded to a request for information as to the specific nature of the matter by enclosing a copy of his letter of September 30, 1929 (which is Deft's Ex. 31). Plaintiff said in Deft's Ex. 23: "Perusal of these letters will acquaint you with the nature of the matter referred to, and also should enable you to raise your complete file on this subject." This letter of September 30, 1929 (Deft's Ex. 31), referring to the agreement, said:

"It was then and is now my understanding that whenever the Wahl interference is closed or settled, and by reason of my forbearance to file applications for patents on additional novel constructions, at your request, you would (when the Wahl matter is settled) re-examine the whole deal with Mr. DeHaven and myself from the beginning and compensate us upon the basis of actual rights transferred to you."

This question of joinder is properly raised under Rule 12(b) by defendant's motion to dismiss because of plaintiff's failure to join an indispensable party. DeKorwin v. First National Bank of Chicago, 7 Cir., 156 F.2d 858, at page 860, says:

"Notwithstanding defendants' suggestion to the contrary, we think the rule as to the indispensability of parties must be determined by federal rather than local rules."

Plaintiff does not claim to represent the estate of DeHaven, or DeHaven's successors in interest, in this suit. He claims to be acting only in his own behalf, and that the oral agreement is for his benefit alone. Yet plaintiff claims that the compensation which might be awarded to him in this suit would be based upon the fair value of the rights conveyed to the defendant by the Fremon and DeHaven assignment of 1926 (Dep. p. 58). In order for plaintiff to prevail in the assertion of his claim under the alleged oral agreement

there must be a readjustment of the payments made to the parties under the joint contract of March 25, 1926.

From those parts of the record about which there is no dispute it is clear that the interests of the plaintiff and DeHaven in whatever award might be made here are inseparable. No final decree could be entered without affecting DeHaven's interest. In Hale v. Campbell, 8 Cir., 127 F.2d 594, 596, it is said:

"* * * The Supreme Court gave its definition of indispensable parties in Shields v. Barrow, 17 How. [129] 130, 139, 58 U.S. [129] 130, 15 L.Ed. 158 (and we know of none in conflict), as: 'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.' "

Here again the effect of plaintiff's laches and delay in commencing this action manifests itself. Had it been commenced seasonably, after the Wahl interference had been "finished," it would have been possible for DeHaven to have joined plaintiff because of the interest that he (DeHaven) had in the increase of the compensation running to him and Fremon by the March 25, 1926, written agreement. Had plaintiff been unwilling to join DeHaven because of his assertion now that he is the sole beneficiary of the oral agreement of November 8, 1927, there would have been an opportunity to bring him in under Rule 19 as an involuntary plaintiff. After 1941, his death closed the door to the opportunity to make him a party to this action. On the theory that DeHaven was a joint obligee with plaintiff, certainly a joint beneficiary under plaintiff's own statements as disclosed by the record, he was an indispensable party. See Moore's Federal Practice, 2nd Ed., Vol. 3, page 2169:

"Where two or more persons are the holders of distinct rights, each may sue without the presence of the others. The rule is different where they are joint obligees. On the theory that the only promise that was made or duty created was single, *joint obligees are indispensable parties* in an action for the enforcement of the right. (Citing cases.) This rule affords protection to the obligor and generally works no hardship upon the obligees, since normally it is to the interest of the obligees to join in the enforcement of their joint right, and where one refuses he may be made a party defendant, or, we believe, an involuntary plaintiff in a proper case." (Emphasis supplied.)

The court notes, without determining here, defendant's argument that the 1926 agreement, Deft's Ex. 1, makes it clear that plaintiff and defendant were joint enterprisers as to subsequently made inventions, and that DeHaven is not mentioned as a mere beneficiary, subject to divorcement at will by plaintiff or defendant. Counsel for the defendant contends that such attempted divorcement as plaintiff now attempts by asserting his rights under the alleged oral agreement of November 8, 1927, amounts to perpetration of a fraud upon DeHaven. Counsel argues that if the 1927 oral agreement is, as alleged in paragraph 3 of the complaint, "to adjust compensation to plaintiff under the contract of March 22, 1926 (Deft's Ex. 1), and to pay to plaintiff amounts representative of the value to defendant of the inventions and patent applications covered by said contract of March 22, 1926, in addition to the amounts previously paid with respect to said contract," then the 1927 oral agreement is illegal and void because of an attempted perpetration of a fraud upon plaintiff's partner, joint enterpriser and claimant DeHaven, citing Horbach v. Coyle, 8 Cir., 2 F.2d 702, page 706, where it is said:

"A contract which has for its object the perpetration of a fraud on a third person is illegal and void."

Counsel also quotes from 17 C.J.S., Contracts, § 198, pages 550–551:

"Contracts, the object or tendency of which is to constitute a fraud or breach of trust or breach of duty on the part

of one who stands in a fiduciary or confidential relation, are illegal and void, as constituting, or tending to constitute, a fraud on third persons. * * such agreements, tending to cause unfaithful conduct by fiduciaries, are illegal because they are in effect agreements to wrong or to defraud the persons whose interests the fiduciaries have in charge. Contracts of this character are those involving dereliction of duty by * * '* an attorney, * * * partners and others who are engaged in a joint enterprise or undertaking or are jointly interested in a matter or jointly liable in an action, * * * and any other persons occupying fiduciary or confidential positions.

"* * * The fact, however, that the third person with respect to whom the relation of trust or confidence exists is not injured, or subsequently makes no complaint as to the transaction, does not purge the contract of its illegality."

To this argument plaintiff countered with the suggestion that if a fraud was perpetrated by plaintiff upon DeHaven the defendant was equally culpable and therefore could not raise the question. That will not follow because of the rule, see 17 C.J.S., Contracts, § 272, p. 656, that "The law in short will not aid either party to an illegal agreement; it leaves the parties where it finds them."

Absence of an indispensable party precludes the court from proceeding with the case. Fredstrom v. Giroux Post No. 11, D.C., 94 F.Supp. 983, 984, and authorities cited.

The court concludes that the action must be dismissed under the provision of Rule 12(b) by reason of the failure to have DeHaven, or his successor in interest, joined as an indispensable party plaintiff. This, the court repeats, is another result of the unexcused delay by plaintiff in commencing this action.

## VI.

On June 30, 1952, the court ruled adversely to defendant, after oral presentation by counsel of the motion for summary judgment and motion to dismiss now considered in this memorandum. In the ruling it was said that "the court is not convinced that there does not remain in the case a genuine issue as to the existence of a valid and subsisting agreement between the parties which forbids entry of a summary judgment." Subsequently, a pre-trial conference was held at Keokuk, Iowa, on October 11, 1952. In preparation for that pretrial conference the court reviewed the record in this case and as a result, because of the doubts engendered, inserted this paragraph in the pre-trial order:

"6. It is requested that counsel for plaintiff will provide brief of their authorities in support of their demand for jury trial of this case and counsel for defendant their authorities in opposition thereto. Pending the determination of the right of the plaintiff to trial by jury, this cause will not be for trial at the term commencing October 27, 1952. It is assigned for oral argument on the morning of October 29, 1952, at 9:30 a. m. on the question of the right of plaintiff to trial by jury and on the part of defendant to show cause why the ruling on the motion for summary judgment and to dismiss should be vacated, and on the questions raised by defendant's objections to plaintiff's interrogatories, which will include the request of defendant as to the measure of damages."

The matter of vacation of the order overruling the motions for summary judgment and to dismiss was argued both orally and by written briefs.

The court has now reconsidered the entire record of pleadings, affidavits, admissions, depositions, for the purpose of determining whether there is for trial a genuine issue of fact. The court has recognized the authority of Ford v. Luria Steel & Trading Corp., 8 Cir., 192 F.2d 880, 882, that it is "settled law that a genuine issue as to a material fact cannot be tried and determined upon affidavits, and that it must conclusively be shown that there is no such issue in the case and that the moving party is entitled to judgment as a matter of law,

before a summary judgment can lawfully be entered."

 In reaching the conclusions set forth in this memorandum opinion the court has been guided by the rule of this Circuit as so clearly stated in Hurd v. Sheffield Steel Corp., 181 F.2d 269, 271:

"The proceeding on motion for summary judgment is not a trial but in the nature of an inquiry in advance of trial for the purpose of determining whether there is a genuine issue of fact. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., contemplates prompt disposition of an action where there is in fact no genuine issue, thus avoiding the necessity of a futile trial. Either party may move for summary judgment—the plaintiff at any time after the answer has been served, and the defendant at any time after claim has been asserted against him. The burden of proof is on the moving party and the rule (56(e)) requires that affidavits supporting or opposing a motion for summary judgment shall be made on personal knowledge and set forth such facts as would be admissible in evidence and which show that the affiant is competent to testify to the facts recited in the affidavit. If it appears from the pleadings, affidavits, admissions or depositions that there is no genuine issue as to any material fact and that the issue is one of law, then if the law so warrants a summary judgment should be entered. The question of the sufficiency of the evidence raises an issue of law and if, under the facts, the court would be required to direct a verdict for the moving party, then a summary judgment should be granted. Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 168 A.L.R. 1130; Sprague v. Vogt, 8 Cir., 150 F.2d 795; Eller v. Paul Revere Life Ins. Co., 8 Cir., 138 F.2d 403, 149 A.L.R. 1191; Gifford v. Travelers Protective Ass'n, 9 Cir., 153 F.2d 209."

This memorandum does not comprise all of the matters in the record which have convinced the court that there remains no real issue of fact. However, enough is stated, in my opinion, to disclose the reasons for the action now taken. That action is to vacate the order entered on July 1, 1952, overruling defendant's motion for summary judgment and to dismiss. The order will be that the motions for summary judgment and to dismiss will be sustained for the reasons set forth in this memorandum opinion.

### Order

The order entered herein on July 1, 1952, is hereby vacated and it is ordered and adjudged that defendant's motions for summary judgment and to dismiss should be and are hereby sustained with costs assessed to plaintiff. Plaintiff is granted an exception.